JUDY SKINNER, Plaintiff v. QUINTILES TRANSNATIONAL CORP., Defendant

No. COA04-15

(Filed 21 December 2004)

**1. Appeal and Error— appealability—interlocutory order— denial of motion for judgment on pleadings—res judicata— substantial right**

Although an order denying a N.C.G.S. § 1A-1, Rule 12(c) motion is interlocutory, the denial of a motion for judgment on the pleadings based on res judicata affects a substantial right and is immediately appealable. Although another panel of the Court of Appeals has limited such interlocutory appeals to situations where the prior decision involved a jury verdict, this panel did not need to attempt to resolve this apparent conflict since it exercised its discretion to hear the appeal under N.C. R. App. P. 2.

**2. Collateral Estoppel and Res Judicata— motion for judgment on the pleadings—new legal theory**

The trial court erred by denying defendant's motion for judgment on the pleadings based on the contention that the final judgment issued in a prior federal case based upon the Americans with Disabilities Act (ADA) barred plaintiff's state claims under the doctrine of res judicata in an action alleging that defendant violated North Carolina's Retaliatory Employment Discrimination Act (REDA) by discharging plaintiff in retaliation for a work injury and her attempt to secure workers' compensation benefits, because: (1) the instant action was a relevant and material matter within the scope of the proceeding which plaintiff, in the exercise of reasonable diligence, could and should have brought forward for determination in her federal action; (2) each of plaintiff's two claims are based upon her termination by defendant, and the

instant action merely presents a new legal theory as to why plaintiff was terminated by defendant; (3) although plaintiff did not receive a right-to-sue under REDA letter from the N.C. Commissioner of Labor until after she filed her federal ADA action, she had a right to request a right-to-sue letter before she filed her federal action and thus could have brought her REDA claim as part of her federal action; and (4) requiring plaintiff to request a right-to-sue letter from the North Carolina Department of Labor in order to bring all of her related claims in one action does not place an unnecessarily burdensome responsibility upon plaintiff.

Judge GEER concurring in a separate opinion.

Appeal by defendant from order entered 4 September 2003 by Judge Stafford G. Bullock in Durham County Superior Court. Heard in the Court of Appeals 15 September 2004.

*Roger W. Rizk for plaintiff-appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Rosemary G. Kenyon, J. Mitchell Armbruster and Kathryn R. Valeika, for defendant-appellant.*

THORNBURG, Judge.

Defendant appeals from an order denying their motion for judgment on the pleadings. Defendant moved for such a judgment based on the contention that the final judgment issued in the prior case *Judy Skinner v. Quintiles Transnational Corp.*, Case No. 1:01-CV-01123 (M.D.N.C.), entered on 19 March 2003, barred plaintiff's state claims under the doctrine of *res judicata.*

Plaintiff was employed by defendant for about six years, from April 1994 until October 2000, in various administrative positions, which required extensive amounts of typing. In early 1995, plaintiff began to experience pain in both of her arms. After a medical evaluation, plaintiff was diagnosed with bilateral ganglion cysts. Defendant provided plaintiff with a new mouse, a new chair with arm rests and occasional help from an assistant. Plaintiff's pain diminished.

In early 2000, plaintiff was promoted to the Information Technology Software Quality Control Department as the documentation processor. Plaintiff began to experience pain in her arms, hands and shoulders. After reporting this pain to defendant on 3 March

2000, plaintiff encountered problems with management in her department and eventually transferred to a different department. Despite repeated discussions with her managers, plaintiff was still given tasks that required extensive typing and computer work, which aggravated her condition. Plaintiff sought medical treatments and was diagnosed with ganglion cysts, torn ligaments in her right hand, tendinitis, bursitis and carpal tunnel syndrome. Plaintiff filed a workers' compensation claim for her condition in March 2000.

Plaintiff contacted defendant's human resources director in an attempt to find a position that would not require typing all day. Upon the director's recommendation, plaintiff sought training for an open Clinical Research Assistant position. On 19 October 2000, while in a training session, plaintiff was asked to attend a meeting with management. Plaintiff was informed that she was being laid off from her current position due to reduction in staff. Plaintiff was offered a new position as a Project Associate, which plaintiff felt she could not perform given the position's requirements and her medical condition. At the conclusion of the meeting, defendant told plaintiff that she had 24 hours to make a decision concerning the Project Associate position.

Plaintiff immediately went to the North Carolina Department of Labor to file an employment discrimination complaint under North Carolina's Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. § 95-240, et seq. (2003). An investigator for the Department of Labor contacted defendant's Human Resources Department to inquire about the status of plaintiff's employment. The investigator was told that plaintiff would not be required to accept or reject the new position within 24 hours and that plaintiff would, in fact, not have to respond until someone from defendant got in touch with plaintiff. Several weeks later, sometime in November 2000, plaintiff also filed a charge of discrimination with the United States Equal Employment Opportunity Commission, claiming that defendant had violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq. (2000). On 22 December 2000, plaintiff received her last paycheck from defendant. On 18 January 2001, defendant informed plaintiff that she had been terminated after she failed to accept the offered job position.

On 24 July 2001, plaintiff filed a complaint in the United States District Court for the Eastern District of North Carolina, alleging that defendant had violated provisions of the ADA in that defendant failed to provide reasonable accommodations for plaintiff's disability and

had discharged plaintiff without accommodating her disability. On 17 December 2001, the matter was transferred to the United States District Court for the Middle District of North Carolina, due to the fact that all matters giving rise to the action occurred in Durham County and Durham County is located in the Middle District. Defendant moved for summary judgment on all of plaintiff's claims. Summary judgment was granted and plaintiff's complaint was dismissed with prejudice on 19 March 2003.

Plaintiff commenced the instant action on 17 January 2003, alleging that defendant violated REDA in that defendant discharged plaintiff in retaliation for a work injury and her attempt to secure workers' compensation benefits. Defendant answered plaintiff's complaint and asserted as a defense that plaintiff's claim was barred by *res judicata* due to the final judgment of the District Court for the Middle District of North Carolina in the first case. Defendant then moved, pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(c), for a judgment on the pleadings based on the *res judicata* defense. This motion was denied on 4 September 2003. Defendant appeals.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." N.C. Gen. Stat. § 1A-1, Rule 12(c) (2003). The function of this section of the rule is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). In determining whether the trial court erred in its ruling on a Rule 12(c) motion, this Court applies the following standard:

> A motion for judgment on the pleadings, or a Rule 12(c) motion, is proper when all the material allegations of fact are admitted on the pleadings and only questions of law remain. The movant must show, even when viewing the facts and permissible inferences in the light most favorable to the nonmoving party, that he is clearly entitled to judgment as a matter of law. Because judgment on the pleadings is a summary procedure and the judgment is final, the movant is held to a strict standard and must show that no material issue of fact exists.

*DeTorre v. Shell Oil Co.*, 84 N.C. App. 501, 504, 353 S.E.2d 269, 271 (1987) (internal citations omitted).

Defendant argues on appeal that the trial court erred in concluding that plaintiff's claim was not barred by *res judicata* and, thus, erred in denying defendant's motion for a judgment on the pleadings.

**[1]** We first note that an order denying a Rule 12(c) motion is interlocutory and that there is generally no right to appeal an interlocutory order. There are two exceptions to this general rule:

> [F]irst, where there has been a final determination of at least one claim, and the trial court certifies there is no just reason to delay the appeal, [N.C. Gen. Stat. § 1A-1, Rule 54(b) (2003)]; and second, if delaying the appeal would prejudice a "substantial right."

*Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 162, 519 S.E.2d 540, 543 (1999) (quoting *Liggett Group v. Sunas*, 113 N.C. App. 19, 23-24, 437 S.E.2d 674, 677 (1993)), *disc. review denied*, 351 N.C. 352, 542 S.E.2d 207-08 (2000). Defendant notes that this Court has held that the denial of a motion for judgment on the pleadings based on *res judicata* affects a substantial right and is immediately appealable. *Clancy v. Onslow Cty.*, 151 N.C. App. 269, 271, 564 S.E.2d 920, 922 (2002). However, another panel of this Court has limited such interlocutory appeals to situations where the prior decision involved a jury verdict. *Country Club*, 135 N.C. App. at 167, 519 S.E.2d at 546. We need not attempt to resolve this apparent conflict, because we choose to exercise our discretion to hear this appeal pursuant to Rule 2 of the Rules of Appellate Procedure.

**[2]** The doctrine of *res judicata* is intended to force parties to join all matters which might or should have been pleaded in one action. *Clancy*, 151 N.C. App. at 271-72, 564 S.E.2d at 922-23. *Res judicata* is a bar to subsequent action when there is a final judgment on the merits in a prior action, both actions involve the same parties and both actions involve the same cause of action. *Id.* at 271, 564 S.E.2d at 922. A final judgment bars not only all matters actually determined or litigated in the prior proceeding, but also all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination. *Rogers Builders v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986).

It is clear that there was a final judgment entered in plaintiff's federal claim and that plaintiff and defendant are the same parties as in the federal claim. However, the two actions do not involve exactly the same issue. Thus, the question becomes whether the instant action

was a "relevant and material [matter] within the scope of the proceeding which [plaintiff], in the exercise of reasonable diligence, could and should have brought forward for determination." *Id.* Plaintiff contends that the instant claim is separate and distinct from the claim brought in the federal action. Plaintiff argues: (1) that claims under the ADA and REDA require proof of different facts, thus making them different claims; and (2) that plaintiff had no REDA claim to assert in the federal action because she had not received a right-to-sue letter from the North Carolina Department of Labor at the time of filing the federal action.

Our courts have not adopted the "transactional approach" to *res judicata* in which all issues arising out of a single transaction or series of transactions must be tried together as one claim. *Bockweg v. Anderson*, 333 N.C. 486, 493-94, 428 S.E.2d 157, 162-63 (1993). In *Bockweg*, the Court determined that *res judicata* was inapplicable because plaintiffs sought separate remedies for distinct acts of negligence leading to separate and distinct injuries. *Id.* at 496, 428 S.E.2d at 164. However, "[t]he defense of *res judicata* may not be avoided by shifting legal theories or asserting a new or different ground for relief . . . ." *Rogers*, 76 N.C. App. at 30, 331 S.E.2d at 735. In the instant action, while plaintiff has brought claims under two different statutes, her claims stem from the same relevant conduct by defendant. In the first complaint, plaintiff specifically alleged that:

> 28. The Defendant has violated [the ADA] by retaliating against the Plaintiff for filing her initial charge of discrimination *by terminating the Plaintiff.*

(Emphasis added). In the instant action, plaintiff alleged:

> 16. The [REDA] prohibits the discharge of an employee in retaliation for a work injury and an attempt by the employee to recover workers [sic] compensation benefits. The Defendant has violated the provisions of such act *by terminating the Plaintiff* in retaliation for her work related injury and her attempt to secure workers [sic] compensation benefits.

(Emphasis added). Further, the United States Magistrate Judge, in an opinion fully adopted by United States District Judge Frank W. Bullock, Jr., spent several pages discussing the termination aspect of plaintiff's ADA claim. It is clear that each of plaintiff's two claims are based upon her termination by defendant and that the instant action

merely presents a new legal theory as to why plaintiff was terminated by defendant. *See Rogers*, 76 N.C. App. at 30, 331 S.E.2d at 735.

However, before *res judicata* can bar the instant action, this Court must also decide whether plaintiff, with reasonable diligence, could and should have brought the claims included in the instant action with the first action. Plaintiff argues that she could not have included her current claims in the first action because she had not yet received a right-to-sue letter from the North Carolina Department of Labor.

"An employee may only bring an action under this section when he has been issued a right-to-sue letter by the [North Carolina Labor] Commissioner." N.C. Gen. Stat. § 95-243(e) (2003). N.C. Gen. Stat. § 95-242(a) (2003) requires the Commissioner of Labor to make a determination on a complaint no later than 90 days after the filing of the complaint. However, this Court has concluded that the time limit is not mandatory because the statute fails to provide any ramifications in the event the Commissioner fails to take action. *Commissioner of Labor v. House of Raeford Farms*, 124 N.C. App. 349, 477 S.E.2d 230 (1996). "An employee may make a written request to the Commissioner for a right-to-sue letter after 180 days following the filing of a complaint if the Commissioner has not issued a notice of conciliation failure and has not commenced an action pursuant to G.S. 95-242." N.C. Gen. Stat. § 95-242(c) (2003).

The Commissioner did not issue plaintiff a right-to-sue letter until 23 October 2002. However, plaintiff filed her complaint on 21 October 2000, and was thus entitled to request a right-to-sue letter on or about 21 April 2001, before she filed the complaint in the original federal action. While the administrative investigation process set up under REDA is a valid and useful part of pursuing employment discrimination claims, plaintiff chose the path of litigation of her claims regarding her termination when she filed her original complaint. We do not believe, in this case, that requiring plaintiff to request a right-to-sue letter in order to bring all of her related claims in one action places an unnecessarily burdensome responsibility upon plaintiff. Thus, we conclude that, with reasonable diligence, plaintiff could and should have brought the claims that make up the instant action as part of her original federal action.

Defendant has shown that plaintiff's claims are barred by *res judicata*. Accordingly, we reverse and remand to the trial court to enter an order granting a judgment on the pleadings to defendant.

Reversed and remanded.

Judge GEER concurs in a separate opinion.

Judge LEVINSON concurs.

GEER, Judge concurring.

I concur with the foregoing opinion, but write separately to address further the fact that a right-to-sue letter had not yet been issued at the time plaintiff filed her ADA suit. Plaintiff's appeal places two policy considerations squarely in conflict.

On the one hand, dismissing this action based on *res judicata* would undermine the administrative scheme established by the General Assembly. By requiring the parties to proceed administratively before the Department of Labor prior to filing suit, the General Assembly—like Congress, before it, in enacting Title VII—recognized the value of having an administrative body investigate claims and, if appropriate, attempt to resolve them without the need for litigation.

On the other hand, the common law rule against claim-splitting is well-established in North Carolina and holds that "all damages incurred as the result of a single wrong must be recovered in one lawsuit." *Bockweg v. Anderson*, 333 N.C. 486, 492, 428 S.E.2d 157, 161 (1993) (emphasis omitted). To allow a person to seek damages for a termination of employment based on one theory and then, after an adverse decision on that theory, seek the same damages under another theory raises the specter of repetitive litigation, duplicative discovery, possibly inconsistent results, and no assurance of finality.

I believe the two policies must be reconciled. The question is whether the policy underlying REDA's administrative review process trumps traditional claim-splitting principles. In this case, as the majority opinion explains, plaintiff was permitted by state law to request a notice of right to sue in order to include the REDA claim in her federal lawsuit. If she preferred to continue the administrative process, she had the option, as defendant suggests, (a) to seek a stay of the pending action in order to allow completion of the administrative process or (b) to move to amend the complaint once the notice of right to sue was received. Plaintiff, however, took no steps at all to

try to include the REDA claim in the pending action. Significantly, the federal district court did not enter summary judgment on plaintiff's ADA claim until 19 March 2003, five months after plaintiff received her notice of right to sue with respect to the REDA claim.

I would also observe that while North Carolina courts have not previously addressed the issue before this Court, numerous other courts have considered closely analogous circumstances and overwhelmingly have reached the same conclusion as this Court. *See, e.g., Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 506 (10th Cir. 2002) (holding that a Title VII lawsuit was barred by *res judicata* since plaintiff could have requested a right-to-sue letter or sought to stay a prior Equal Pay Act lawsuit pending completion of the EEOC administrative process), *cert. denied*, 540 U.S. 826, 157 L. Ed. 2d 48, 124 S. Ct. 181 (2003); *Churchill v. Star Enters.*, 183 F.3d 184, 193-94 (3d Cir. 1999) (when a jury had rendered a verdict in a case alleging that plaintiff's termination violated the FMLA, plaintiff's second action challenging the discharge under the ADA was barred by *res judicata*; plaintiff should have requested a right-to-sue letter from the EEOC or sought a stay of the FMLA action pending receipt of the letter); *Hapgood v. City of Warren*, 127 F.3d 490, 494 (6th Cir. 1997) (wrongful discharge ADA claim was barred by *res judicata* because of entry of summary judgment in a state court action alleging discharge in retaliation for workers' compensation claim even though plaintiff did not have right-to-sue letter from the EEOC; holding that plaintiff should have sought to amend the state complaint upon obtaining the letter), *cert. denied*, 523 U.S. 1046, 140 L. Ed. 2d 511, 118 S. Ct. 1361 (1998).

Because I find these cases persuasive in balancing the conflicting policies, I join the majority opinion. I would, however, urge trial courts to view favorably motions to stay proceedings and motions to amend complaints in these circumstances. *See Churchill*, 183 F.3d at 194 ("We believe that district courts are likely to look favorably on applications for stays of FMLA proceedings while plaintiffs promptly pursue administrative remedies under Title VII and similar state laws and we urge them to do so.").