TONG v. DUNN

[231 N.C. App. 491 (2013)]

━━━━━━━

SIU S. TONG, ET AL., PLAINTIFFS
v.
DAVID DUNN, TIMOTHY KRONGARD, ED MASI, SOPHIA WONG
AND JANET WYLIE, DEFENDANTS

No. COA12-1261

Filed 17 December 2013

1. **Appeal and Error—motion to dismiss appeal—denied**

    Defendants' motion to dismiss the appeal under *Hill v. West*, 177 N.C. App. 132, was denied by the Court of Appeals. *Hill* has been repeatedly limited to its specific, unusual facts, which were not present here.

2. **Collateral Estoppel and Res Judicata—claim splitting— federal and state actions—separate wrongs**

    The trial court erred in an action by the founder of a company arising from a merger by concluding that the doctrines of claim-splitting and res judicata applied. A separate wrong was asserted in the federal action and in this case; plaintiff's claims in the federal action involved claims arising out of his position as an employee while the current action involved a wrong inflicted upon plaintiff in his capacity as a common shareholder.

**TONG v. DUNN**

[231 N.C. App. 491 (2013)]

Appeal by plaintiff from order entered 25 May 2012 by Judge James L. Gale in Orange County Superior Court. Heard in the Court of Appeals 9 April 2013.

*Poyner Spruill LLP, by Steven B. Epstein and Andrew H. Erteschik, for plaintiff-appellant.*

*Kilpatrick Townsend & Stockton LLP, by John M. Moye, for defendants-appellees.*

GEER, Judge.

Plaintiff Siu S. Tong appeals from an order granting judgment on the pleadings to defendants David Dunn, Timothy Krongard, Ed Masi, Sophia Wong, and Janet Wylie on Mr. Tong's claim for breach of fiduciary duty. Defendants contended and the trial court agreed that Mr. Tong's claim in this case was barred by res judicata because the claim in this case arose from the same set of operative facts as the claims in Mr. Tong's earlier employment action. We hold that the order is contrary to our Supreme Court's holding in *Bockweg v. Anderson*, 333 N.C. 486, 428 S.E.2d 157 (1993), and, therefore, reverse and remand.

## Facts

Mr. Tong was the founder of Engineous Software, Inc. ("Engineous"). During the events that gave rise to this action, Mr. Tong continued to be a key employee of Engineous, a common shareholder of Engineous, and a member of the Board of Directors of Engineous elected to represent the common shareholders. The common shareholders collectively owned a minority interest in the company.

In Spring 2006, the Engineous Board of Directors, a majority of which were preferred shareholders, hired Wachovia Bank to explore opportunities to sell Engineous. Ultimately, Dassault Systems S.A. ("Dassault") offered $35-40 million for Engineous. Although Mr. Tong believed that Dassault's offer was not in the best interests of the common shareholders, the Board ultimately agreed to a merger with Dassault in which Dassault acquired Engineous for approximately $40 million and merged Engineous into ENG Acquisition, Inc. ("ENG"), a wholly-owned subsidiary of Dassault.

On 11 July 2011, Mr. Tong filed suit in Wake County Superior Court against Dassault, Engineous, Dassault Systemes Simulia K.K. formerly known as Engineous Japan, Inc., Janet Wylie, Edward Masi, Tim

Krongard, David Dunn, Sophia Wong, and Charles Johnson. This action was ultimately removed to federal court ("the federal action").

In an amended complaint, Mr. Tong alleged that the individual defendants knew that the proposed merger agreement between Engineous and Dassault made Mr. Tong's continued employment a condition of Dassault purchasing Engineous. On 10 June 2008, however, Mr. Tong resigned from the Engineous Board of Directors because of his concerns regarding the manner in which the proposed sale of Engineous to Dassault would affect the common shareholders.

On 13 June 2008, three days before the execution of the merger agreement, Engineous, acting through defendant Krongard with the knowledge and consent of the other individual defendants (all of whom were members of Engineous' Board of Directors), promised Mr. Tong a payment of at least $300,000.00 (the "carve-out payment") if he would execute an employment agreement agreeing to continue to work for Dassault after the merger. The amended complaint alleged that Mr. Krongard knew that Mr. Tong would have to also sign a release agreement in order to receive the carve-out payment, but Mr. Krongard intentionally or negligently, with the knowledge and consent of the other individual defendants, failed to inform Mr. Tong of that requirement. Mr. Tong asserted that Mr. Krongard's offer of the carve-out payment without mention of the required release was intended to fraudulently induce Mr. Tong into signing an employment agreement with Dassault. Further, Mr. Tong alleged that Engineous and the individual defendants knew that he would likely exercise his rights as a minority shareholder to challenge the sale.

On 16 June 2008, Mr. Tong signed the employment agreement with Dassault. On the same day, after Mr. Tong signed the employment agreement, Engineous and Dassault signed the merger agreement. The merger agreement required that Mr. Tong, as well as certain other Engineous employees, have active and valid employment agreements with Dassault at the time the merger closed in order for the deal to be consummated.

On 8 July 2008, the shareholders approved the merger agreement. Mr. Tong did not vote in favor of the merger agreement and preserved his rights as a common shareholder to object to the merger. On 14 July 2008, however, defendant Janet Wylie, the CEO of Engineous, notified Mr. Tong for the first time that in order to receive the $300,000.00 carve-out payment, he would have to sign a release extinguishing any claims he had as a common shareholder to challenge the sale of Engineous.

Because Mr. Tong refused to sign the release, he was not paid the $300,000.00 carve-out payment. On 21 July 2008, the merger closed and other Engineous executives who had signed employment contracts and releases were paid the promised carve-out payments.

The federal amended complaint further alleged that Mr. Tong complied with his employment agreement by commencing work for Dassault. Mr. Tong alleged, however, that Dassault breached the employment agreement by not paying him performance bonuses and by undermining Mr. Tong's ability to earn compensation specified in the agreement as part of an incentive plan. The amended complaint alleged that Dassault terminated Mr. Tong's employment on 13 January 2010, but refused, in breach of the terms of the employment agreement, to pay reasonable business expenses and severance pay. Dassault also failed to pay a Japanese retirement allowance that Mr. Tong alleged was due for his service as a director of Engineous Japan, Inc.

Mr. Tong asserted claims in the federal action against the individual defendants (defendants Krongard, Wylie, Masi, Dunn, Wong, and Johnson) and Engineous for fraudulent inducement and negligent misrepresentation based on Mr. Tong's having been induced to sign the employment agreement in exchange for $300,000.00 without being told that receipt of the sum was conditioned on his signing a release of his claims as a common shareholder. Mr. Tong also alleged a claim for breach of contract against Engineous for failure to pay the $300,000.00 and against Dassault for tortious interference with the agreement to pay Mr. Tong $300,000.00.

In addition, Mr. Tong sued Dassault for breach of the employment agreement, violation of the North Carolina Wage and Hour Act, and breach of contract and/or quantum meruit for failure to pay the Japanese retirement allowance.[1] Mr. Tong stated in his amended complaint that he consented to arbitrate the claims brought against Dassault for breach of contract and violation of the Wage and Hour Act.

On 20 July 2011, 10 days after he filed his first lawsuit, Mr. Tong and 47 other plaintiffs, all common shareholders of Engineous, filed this action in Orange County Superior Court against individual defendants David Dunn, Timothy Krongard, Ed Masi, Sophia Wong, and Janet Wylie, all of whom were preferred shareholders of Engineous and members of Engineous' Board of Directors. Also joined as a defendant was ENG in its own capacity and as the successor to Engineous.

---

1. Mr. Tong's claim for the retirement allowance was also brought against the successor to Engineous Japan, Inc.

The Orange County Superior Court complaint alleged that the individual defendants owed the common shareholders a fiduciary duty, which included a duty to maximize the value to all shareholders, including the common shareholders, in connection with Dassault's acquisition of Engineous. The complaint alleged that "[t]he Individual Defendants breached these duties by knowingly and recklessly placing their own interests above those of all shareholders, self-dealing, and failing to adequately oversee the Engineous[] officers, failing to maximize the value of the sale of Engineous, thereby actually and proximately causing Mr. Tong and the other Common Shareholders to suffer damages in an amount to be proven at trial." The complaint further asserted a claim for aiding and abetting these breaches of fiduciary duty against ENG.

In support of these claims, plaintiffs alleged that Mr. Tong agreed to work with Mr. Krongard and Wachovia Bank to explore opportunities to sell Engineous. Although Mr. Tong's efforts resulted in four well-known potential buyers expressing interest, with two of them entering a bidding process, the board of directors cut off Mr. Tong's interactions with the potential buyers. The complaint further alleged that during board meetings, statements were made reflecting that certain board members were placing their own interests ahead of the common shareholders. Mr. Tong refused to sign board minutes for one of the key board meetings because, the complaint alleged, of "the omission of many statements and the failure to acknowledge the apparent agreement between the preferred board members that their individual interests should and would drive the decision making process going forward (casting aside the common shareholders' interests)."

The board and Engineous' executive management then attempted to block Mr. Tong's interaction with the potential buyer, Dassault, so as to limit the flow of information to Mr. Tong and the other common shareholders. Although board members recognized that Engineous was not in a strong position to sell and although Mr. Tong urged the board to wait until after the roll out of Engineous' new enterprise product because it would likely significantly improve the company's sale value, the board refused to wait.

The board members justified that refusal by expressing concern about a potential cash flow shortage in the future, and yet awarded substantial executive bonuses to company officers, including the individual defendants. The complaint further alleged that the preferred stock board members, including the individual defendants, voted to set aside funds to reward employees and executives who supported the merger

that favored preferred shareholders and to buy general releases from certain key employees.

Dassault initially made an offer of $35 million to $40 million for Engineous. Mr. Dunn, a member of the board representing preferred shareholders, proposed that the board accept the sale price, while Mr. Tong proposed that the board wait for a competing offer from Siemens. Mr. Tong expected that an additional bidder would offer a higher price. The complaint alleged that the board, however, showed little interest in attempting to negotiate a higher sale price, but rather were more interested in proceeding to a closing that would benefit the preferred shareholders.

The complaint alleged that Mr. Krongard stated that particular terms offered by Dassault -- including the speed at which the preferred shareholders would collect the sale proceeds, the size of the escrow, and the timing of the closing -- were of paramount importance. Those terms did not, however, assist the common shareholders or protect the value of the common shareholders' interests in Engineous. In addition, according to the complaint, throughout the merger and acquisition process, the individual defendants Ms. Wylie and Mr. Krongard interfered with Mr. Tong's right, as a director representing common shareholders and as a common shareholder himself, to interact with participants and gather information about ongoing developments.

Dassault acquired Engineous by merger with ENG for approximately $40 million. The complaint alleged that several board members made false representations to common shareholders to represent that the deal accorded with their fiduciary responsibilities when, in fact, the individual defendants "were considering their own self-interest first." The complaint also asserted that had defendants acted in accord with their fiduciary responsibilities, the ultimate valuation of Engineous would have been higher which would have benefitted the common shareholders.

Further, according to the complaint, "in closing this transaction in the manner described above, and as they did, the Defendants were not acting in the best interests of the Company and all its shareholders, but rather in their own self-interest, causing harm to Mr. Tong and the Common Shareholders." As relief, the Orange County complaint sought a declaration that the Engineous board's actions constituted breaches of fiduciary duty. The complaint also sought compensatory damages suffered as a result of defendants' wrongdoing.

The individual defendants filed an answer dated 19 September 2011. Defendant ENG filed a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on 29 September 2011.

In the federal action, on 7 October 2011, Mr. Tong filed a stipulation of dismissal with prejudice of his claims against Engineous and the individual defendants for fraudulent inducement to contract and negligent misrepresentation, as well as his claims against Engineous for breach of contract and against Dassault for tortious interference with the contract to pay the carve-out payment.

On 24 October 2011, the individual defendants in the Orange County action filed an amended answer adding an affirmative defense that "[p]laintiff Tong's claims against the Individual Defendants are barred by the doctrines of res judicata and claim splitting, given that Plaintiff Tong filed a prior action against the Individual Defendants . . . and that action was dismissed with prejudice." The answer contended that "[u] nder the doctrines of res judicata and claim splitting, the prior disposition of the Federal Action operates as a bar on Plaintiff Tong's present action against the Individual Defendants, and thus Plaintiff Tong's claims are subject to dismissal as a matter of law." The individual defendants then moved for judgment on the pleadings as to Mr. Tong's claims on 30 November 2011.

The trial court granted ENG's motion to dismiss on 26 March 2012. On 25 May 2012, the trial court also granted the individual defendants' motion for judgment on the pleadings as to Mr. Tong's claims. The court concluded "that issues Tong now seeks to litigate in the Present Action were raised by the pleadings in the [federal action] and res judicata applies. Rather than asserting different injuries arising from independent successive acts, Tong complains that Individual Defendants set out on a concerted course of action designed to complete the Merger, including buying Tong's consent through false pretenses and at the same time extinguishing the rights of common shareholders, including Tong's. While other shareholders . . . were not party to the [federal action] and are not then subject to res judicata, Tong's claims are barred by his dismissal of the [federal action] with prejudice."

On 5 August 2012, the remaining plaintiffs other than Mr. Tong filed a notice of voluntary dismissal without prejudice. Mr. Tong filed a notice of appeal from the order granting judgment on the pleadings on 7 August 2012.

## Motion to Dismiss Appeal

[1] We first address defendants' motion to dismiss Mr. Tong's appeal. Defendants contend that this Court must dismiss the appeal under *Hill v. West*, 177 N.C. App. 132, 627 S.E.2d 662 (2006). This Court has, however, repeatedly limited *Hill* to the specific, unusual facts present in that

case. The circumstances present in *Hill* are not found in this case and, therefore, *Hill* is not controlling here.

In *Hill*, the plaintiffs filed a negligence action arising out of a traffic accident. *Id.* at 133, 627 S.E.2d at 662-63. The trial court entered an order granting two defendants' Rule 12(b)(6) motion to dismiss and a subsequent order granting summary judgment to three other defendants, with claims against one defendant remaining unresolved. *Id.* at 133-34, 627 S.E.2d at 663. This Court dismissed the plaintiffs' appeal from the partial summary judgment order as interlocutory, noting in addition that the plaintiffs had failed to include a statement of grounds for appellate review in violation of the Rules of Appellate Procedure. *Id.* at 133, 627 S.E.2d at 663.

On remand, the trial court entered a consent order that purported to be a voluntary dismissal pursuant to Rule 41(a)(1) of the Rules of Civil Procedure of the claims against the remaining defendant. *Hill*, 177 N.C. App. at 135, 627 S.E.2d at 664. The order, however, included a special provision stating that the trial court " 'specifically order[ed], with the consent of all parties, that if this case is remanded for trial, all claims against [the remaining defendant] may be reinstated as the Plaintiffs deem necessary and that the prior dismissals without prejudice will not be pled as a bar to said claims.' " *Id.* In other words, contrary to Rule 41(a)(1), the claims against the remaining defendant could be reinstated at any time without regard to the one-year limitation contained in Rule 41(a)(1).

When the plaintiffs then appealed the summary judgment order a second time, this Court first noted that the plaintiffs had again violated the Rules of Appellate Procedure by failing to include a statement of the grounds for appellate review. *Hill*, 177 N.C. App. at 134, 627 S.E.2d at 633. Relying on *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005), the Court found no basis for suspending the Rules of Appellate Procedure under Rule 2. *Hill*, 177 N.C. App. at 134, 627 S.E.2d at 663-64.

The Court then pointed out, in addition, that the unique consent order was a "manipulat[ion of] the Rules of Civil Procedure in an attempt to appeal the 2003 summary judgment that otherwise would not be appealable" and was not a final judgment within the meaning of Rule 54 of the Rules of Civil Procedure. *Id.* at 135, 627 S.E.2d at 664. Based on both the appellate rules violation and the attempt to manipulate the Rules of Civil Procedure, this Court dismissed the second appeal. *Id.* at 136, 627 S.E.2d at 664.

In subsequent cases, this Court has declined to dismiss appeals under *Hill* under circumstances identical to those in this case. In *Curl v. Am. Multimedia, Inc.*, 187 N.C. App. 649, 654, 654 S.E.2d 76, 80 (2007), this Court limited *Hill*'s holding "to the facts of that case," noting that "*Hill* did not attempt to distinguish its holding from the significant body of case law holding contra" and that "the holding in *Hill* was apparently based in part on the appellants' 'manipulative' behavior and failure to follow the Rules of Appellate Procedure[.]" *See also Goodman v. Holmes & McLaurin Attorneys at Law*, 192 N.C. App. 467, 472, 665 S.E.2d 526, 530 (2008) (declining to dismiss appeal based on *Hill* even though appeal followed voluntary dismissal without prejudice of claims surviving trial court's order because plaintiff followed Rules of Appellate Procedure).

This Court also rejected an identical argument based on *Hill* in *Duval v. OM Hospitality, LLC*, 186 N.C. App. 390, 651 S.E.2d 261 (2007). This Court explained: "The stipulation of dismissal did not contain any additional language purporting to give plaintiff any time beyond that permitted by Rule 41(a)(1) to pursue her claim against Days Inn. The procedural posture of this case does not cause us to believe that counsel are 'manipulating the Rules of Civil Procedure in an attempt to appeal' an order that should not be appealable. We therefore conclude that *Hill* is inapposite and does not compel us to dismiss this appeal as interlocutory." *Id.* at 394, 651 S.E.2d at 264 (quoting *Hill*, 177 N.C. App. at 135, 627 S.E.2d at 644).

This case is indistinguishable from *Curl*, *Goodman*, and *Duval*, and for the reasons set out in those cases is not controlled by *Hill*. We, therefore, deny defendants' motion to dismiss this appeal.

## Motion for Judgment on the Pleadings

[2] Turning to the merits of this appeal, "[t]his Court reviews *de novo* a trial court's ruling on motions for judgment on the pleadings. Under a *de novo* standard of review, this Court considers the matter anew and freely substitutes its own judgment for that of the trial court." *Reese v. Mecklenburg Cnty.*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 38 (2009) (internal citation omitted).

Defendants argued and the trial court agreed that Mr. Tong's filing of the federal action as well as his claims in this action constituted "claim-splitting." As our Supreme Court has explained, "the common law rule against claim-splitting is based on the principle that all damages incurred as the result of a *single wrong* must be recovered in one lawsuit." *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161. Under the rule, "subsequent actions which attempt to proceed by asserting a new legal

theory or by seeking a different remedy are prohibited under the principles of *res judicata.*" *Id.* at 494, 428 S.E.2d at 163.

In this case, there is no question that Mr. Tong's claims in the federal action and his claims in this action all arose out of the same factual context involving the negotiation and consummation of the merger between Engineous and Dassault. The trial court found claim-splitting because of this commonality of facts, noting that the two actions shared at least 21 common factual allegations. That approach, however, amounts to the analysis urged by Justice Meyer in his dissent in *Bockweg.* Justice Meyer contended that res judicata should have barred the Bockwegs' claims because they arose out of a " 'single core of operative facts.' " *Id.* at 498, 428 S.E.2d at 165 (Meyer, J., dissenting) (quoting *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 854 (7th Cir. 1985)).

The *Bockweg* majority, however, rejected that approach. In *Bockweg*, the plaintiffs had brought a federal lawsuit alleging, among other things, that the defendants were negligent in their failure to monitor Ms. Bockweg's nutrition during her hospital stay, causing her to have brain damage, and that they also were negligent in their failure, during that hospital stay, to diagnose and treat a pelvic infection that caused the loss of Ms. Bockweg's reproductive organs. *Id.* at 488, 428 S.E.2d at 159. The plaintiffs voluntarily dismissed without prejudice the claim as to the loss of Ms. Bockweg's reproductive organs against certain defendants. *Id.* The brain damage claim then proceeded to trial in federal court, with the jury rendering a verdict in the defendants' favor. *Id.* at 489, 428 S.E.2d at 159.

Within one year of their taking a voluntary dismissal of the claims relating to the loss of Ms. Bockweg's reproductive organs, the plaintiffs refiled that action in state court. *Id.* After an appeal and remand not relevant here, the trial court denied the defendants' motion for summary judgment based on res judicata, and the defendants appealed. *Id.*, 428 S.E.2d at 159-60.

The Supreme Court affirmed the trial court, noting first that "[w]here a plaintiff has suffered multiple wrongs at the hands of a defendant, a plaintiff may normally bring successive actions, or, at his option, may join several claims together in one lawsuit." *Id.* at 492, 428 S.E.2d at 161 (internal citations omitted). The defendant had argued, however, that the Supreme Court should adopt the transactional approach set out in the Restatement (Second) of Judgments § 24 (1982), pursuant to which "all issues arising out of a transaction or series of transactions must be tried together as one claim." *Bockweg*, 333 N.C. at 493, 428 S.E.2d at 162 (internal quotation marks omitted).

The Supreme Court in *Bockweg* declined to adopt the transactional approach, but observed that the cases relied upon by the defendants "make it clear that subsequent actions which attempt to proceed by asserting a new legal theory or by seeking a different remedy are prohibited under the principles of *res judicata*." *Id.* at 494, 428 S.E.2d at 163. The Court held that even under that test, the plaintiffs' claims were not barred because the "[p]laintiffs did not merely change their legal theory or seek a different remedy. *Rather, plaintiffs are seeking a remedy for a separate and distinct negligent act leading to a separate and distinct injury.*" *Id.* (emphasis added). This conclusion was true even though both negligent acts arose out of, as Justice Meyer noted, "a single core of operative facts" and involved "two tightly intertwined theories of medical negligence." *Id.* at 497, 428 S.E.2d at 164 (Meyer, J., dissenting).

In this case, as in *Bockweg*, Mr. Tong did not merely change his legal theory or seek a different remedy for a single wrong. Mr. Tong's claims in the federal action involved claims arising out of his position as an employee. The wrong alleged involved false promises of a payment of $300,000.00 intended to induce Mr. Tong to sign an employment agreement with Dassault. In contrast, the current action involves a wrong inflicted upon Mr. Tong in his capacity as a common shareholder – the individual defendants allegedly breached their duty to all the common shareholders, including Mr. Tong, by not seeking a merger deal that benefitted all shareholders and not just the preferred shareholders.

We find this case materially indistinguishable from *Bockweg* in which two separate acts of negligence arose out of a common set of facts. Likewise, here, claims of (1) fraudulent and negligent misrepresentations to an employee, and (2) a breach of fiduciary duty to a common shareholder, arose out of a common set of facts. But, also as in *Bockweg*, Mr. Tong is seeking, in this case, a remedy for a "separate and distinct [tortious] act leading to a separate and distinct injury." *Id.* at 494, 428 S.E.2d at 163. Under *Bockweg*, Mr. Tong could have brought suit alleging both sets of claims, but he was not required to do so. As the Supreme Court concluded in *Bockweg*, "the doctrine of *res judicata* is not applicable to bar [plaintiff's] present action." *Id.* at 497, 428 S.E.2d at 164.

Defendants, however, point to this Court's application of *Bockweg* in *Skinner v. Quintiles Transnational Corp.*, 167 N.C. App. 478, 606 S.E.2d 191 (2004). In *Skinner*, this Court emphasized that our courts "have not adopted the 'transactional approach' to *res judicata* in which all issues arising out of a single transaction or series of transactions must be tried together as one claim." *Id.* at 483, 606 S.E.2d at 194. The Court

concluded nonetheless that even under the *Bockweg* test, the plaintiff's claims in her state court action were barred by the entry of summary judgment in a prior federal court action. *Id.* at 484, 606 S.E.2d at 195.

In the federal court action, the *Skinner* plaintiff had alleged that the defendant violated the Americans with Disabilities Act when it terminated her employment in retaliation for her filing an EEOC charge. *Id.* at 483, 606 S.E.2d at 194. In the state court action, the plaintiff alleged that the defendant's termination of her employment violated North Carolina's Retaliatory Employment Discrimination Act. *Id.* In other words, as this Court concluded, "[i]t is clear that each of plaintiff's two claims are based upon her termination by defendant and that the instant action merely presents a new legal theory as to why plaintiff was terminated by defendant." *Id.* at 483-84, 606 S.E.2d at 194.

Thus, *Skinner* involved a single wrong -- the termination of the plaintiff's employment -- for which the plaintiff sought recovery under two different legal theories. Here, in contrast, Mr. Tong alleges two separate wrongs. Nothing in *Skinner* suggests that res judicata applies to bar Mr. Tong's claims in this case.

Defendants also point to *Fickley v. Greystone Enters., Inc.*, 140 N.C. App. 258, 536 S.E.2d 331 (2000), and *Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 609 S.E.2d 259 (2005). In *Fickley,* this Court held that the plaintiffs -- who had each leased property from the defendant landlord -- should have asserted their claims against the defendants for retaliatory eviction and unfair and deceptive trade practices as a compulsory counterclaim in their landlord's summary ejectment proceedings against the tenants because "the determinative question in both actions is whether [the plaintiffs] breached their respective lease agreements, making defendants' termination of the lease agreements valid." 140 N.C. App. at 261, 536 S.E.2d at 333. In *Moody,* this Court found claim-splitting when the "plaintiff [had] brought three actions for breach of the same contract[,]" a single, three-year lease agreement. 169 N.C. App. at 85, 609 S.E.2d at 262.

These two cases fall squarely within the principle set forth in *Gaither Corp. v. Skinner*, 241 N.C. 532, 536, 85 S.E.2d 909, 912 (1955), and recognized in *Bockweg*, 333 N.C. at 494, 428 S.E.2d at 162, that res judicata applies "in the context of a second suit for damages under an entire and indivisible contract" because " 'for the breach of an entire and indivisible contract only one action for damages will lie.' " *Id.* (quoting *Gaither*, 241 N.C. at 536, 85 S.E.2d at 912). This case does not, however, involve claims under an entire and indivisible contract and, therefore, *Gaither*,

*Fickley*, and *Moody* provide no basis for affirming the trial court's order in this case.

*Bockweg* is the controlling authority. Because this case involves a separate wrong from the wrong asserted in the federal action, the trial court erred in concluding that the doctrines of claim-splitting and res judicata applied. Consequently, we reverse the order granting defendants' judgment on the pleadings.

Reversed and remanded.

Judges McGEE and ROBERT C. HUNTER concur.