Powell v. Dunn, 2014 NCBC 3.

STATE OF NORTH CAROLINA

COUNTY OF ORANGE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 1318

DAVID J. POWELL, Jr.; JONATHAN
GIBBS, *et al.*,

    Plaintiffs,

  v.

DAVID DUNN; TIMOTHY
KRONGARD; ED MASI; SOPHIA
WONG; JANET WYLIE,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION**

{1}  THIS MATTER is before the court on Defendants' Motion for Judgment on the Pleadings ("Motion"). For the reasons stated below, the Motion is GRANTED IN PART and CONTINUED IN PART. The Motion is granted as to Plaintiffs' claim pursuant to N.C. Gen. Stat. § 75-1.1. As to the statute of limitations defense to Plaintiffs' breach of fiduciary duty claim, the court will grant limited discovery pursuant to Rule 56(f), allow supplemental briefing, and then hear the matter as a motion for summary judgment.

  *Poyner & Spruill LLP by Steven B. Epstein for Plaintiffs.*

  *Kilpatrick Townsend & Stockton LLP by Gregg E. McDougal and John M. Moye for Defendants.*

Gale, Judge.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

{2}    In ruling upon a Rule 12(c) motion, the court does not adjudicate facts but construes the facts alleged and draws all reasonable inferences in Plaintiffs' favor, without being bound to any legal conclusions asserted by either party. *See, e.g.*, *Carpenter v. Carpenter*, 189 N.C. App. 755, 762, 659 S.E.2d 762, 767 (2008). Plaintiffs allege the following facts in support of their claims pursuant to Section 75-1.1.

{3}    Plaintiff David J. Powell, Jr. ("Powell") is a cofounder of Engineous Software, Inc. ("Engineous"). (Compl. ¶ 2.) The remaining Plaintiffs are all individuals or entities who are, were, or represent owners or option holders of Engineous common stock, and collectively represent a majority of the common stock ownership. (Compl. ¶¶ 3–42, 52.) Dr. Siu S. Tong ("Tong"), a non-party,[1] was a cofounder of Engineous and the largest shareholder of its common stock. (Compl. ¶ 56.)

{4}    Defendants David Dunn ("Dunn"), Timothy Krongard ("Krongard"), Ed Masi ("Masi"), Sophia Wong ("Wong"), and Janet Wylie ("Wylie") are former directors of Engineous who also held preferred stock in Engineous, as did the majority of all Board members. (Compl. ¶¶ 43, 47–51.)

{5}    In early 2006, the Board decided to explore selling the company and retained an investment banker. (Compl. ¶ 53.) The company's investment banker initially projected a sale price between $100 and $120 million, but only two potential acquirers entered the bidding process, and Engineous sold for approximately $40 million on July 21, 2008. (Compl. ¶¶ 54–55, 79.) When the investment bank did not produce interested buyers at the projected price, Tong undertook efforts to solicit potential acquirers. (Compl. ¶¶ 58–59.) While both were

---

[1] Dr. Tong is a Plaintiff in a separate action pending in this court following its remand from the North Carolina Court of Appeals. *See generally Tong v. Dunn*, No. COA12-1261, 2013 N.C. App. LEXIS 1303 (N.C. Ct. App. Dec. 17, 2013); *Tong v. Dunn*, 2012 NCBC LEXIS 31 (N.C. Super. Ct. May 18, 2012). The court will later consider whether the cases should be consolidated or otherwise coordinated.

directors, Tong and Krongard initially agreed that a price below $60 million would not be in the best interests of Engineous or its shareholders and agreed not to pursue any merger below this price. (Compl. ¶¶ 54, 56–57.) Of the four buyers who initially expressed interest, only two—Dassault Systemes S.A. ("Dassault") and Siemens—entered the bidding process. (Compl. ¶¶ 59, 74.)

{6} In fall 2007, the Board terminated Tong's involvement in the acquisition process, appointed Wylie to represent the company going forward, and undertook efforts to exclude Tong from communications with Dassault. (Compl. ¶¶ 60–61.) At one meeting Dunn opined that Tong could not protect the shareholders' interest "since the preferred shareholders 'are ahead' of the common shareholders." (Compl. ¶ 61.) Tong refused to sign minutes of one Board meeting because they omitted statements reflecting possible conflicts of interest between the preferred and common shareholders and the plan to structure the merger to benefit preferred shareholders (including Defendants and the entities they represented) without protecting common shareholders. (Compl. ¶¶ 61–62, 64.)

{7} Tong believed Engineous would obtain higher offers after rolling out a new product and wanted to delay selling the company, but the Board, including Defendants, wanted to sell quickly. (Compl. ¶¶ 65–68, 73.) Some members of the Board further opined that a future potential cash flow shortage weighed in favor of a quicker sale. (Compl. ¶ 68.)

{8} Engineous eventually used merger proceeds to make "carve-out" payments to employees and executives who supported the merger and to obtain general releases from key employees. (Compl. ¶¶ 63, 70.) Plaintiffs allege that Wylie and other preferred shareholder Board members misrepresented to Engineous's employees that Dassault, rather than Defendants, had insisted on the releases. (Compl. ¶¶ 69, 71.)

{9} Krongard represented that deal terms offered by Dassault, including the timing of the closing, size of the escrow, and the speed at which the preferred shareholders would collect sale proceeds, were crucial factors in approving the deal. (Compl. ¶ 77.) These terms protected the preferred shareholders' interests, but they

did not protect or enhance the value of the common shares in the merger. (Compl. ¶ 77.)

{10} Although the Board continued to negotiate with Siemens, Defendants "showed little interest in undertaking any actions to negotiate a higher sale price" that would better serve the common shareholders' interests. (Compl. ¶ 75.) In sum, Plaintiffs contend that Engineous's "former officers and directors" structured the merger with Dassault "in a manner designed to enrich [Engenious's] preferred shareholders . . . at the expense of the common shareholders" in breach of their fiduciary duties to these shareholders. (Compl. ¶ 1.)

{11} The Complaint does not allege more specifically the actual structure of the merger, but it does refer to the merger as a "wash out" and alleges that the ultimate sales price was less than the preference amounts which would have to have been satisfied before returning value to the common shareholders. (Compl. ¶¶ 80–81).

{12} Plaintiffs contend that Defendants breached their fiduciary duties to all shareholders by approving the merger and engaging in self-dealing. (Compl. ¶¶ 85–87.) Plaintiffs also allege that Defendants' actions constitute unfair or deceptive acts in violation of Section 75-1.1. (Compl. ¶¶ 88–91.)

{13} Plaintiffs initiated the lawsuit by filing their Complaint in Orange County on August 1, 2013. The case was designated a Business Court case by Chief Justice Sarah Parker by Order dated August 19, 2013 and assigned to the undersigned on August 21, 2013. Defendants filed their Motion pursuant to Rule 12(c) on October 9, 2013. The Motion contends that: (1) Plaintiffs' claims are barred by the applicable statutes of limitation; and (2) the Section 75-1.1 claim for unfair or deceptive trade practices does not state a claim upon which relief may be granted. The statute of limitations defense was brought under Rule 12(c) because Defendants relied, in part, on matters attached to their Answer. Consideration of whether the Complaint states a Section 75.1.1 claim would be the same whether the

Motion was brought pursuant to Rule 12(b)(6) or Rule 12(c), as that inquiry is based solely on the allegations of the Complaint.[2]

{14}    The Motion was fully briefed and the court held a hearing on January 9, 2014.  At the hearing, the Parties acknowledged that ruling on the statute of limitations issue requires consideration of matters outside the pleadings, so that issue will be considered as a summary judgment motion pursuant to Rule 56.  The court indicated that it would grant Plaintiffs limited discovery pursuant to Rule 56(f) and allow further briefing and argument.  Accordingly, the Motion is now ripe only as to the issue of whether the Complaint states a claim upon which relief may be granted pursuant to Section 75-1.1.[3]

## II.    ANALYSIS

{15}    The standards are the same for a motion to dismiss under Rule 12(b)(6) and Rule 12(c).  In either instance, the moving party must establish that "no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter*, 189 N.C. App. at 761, 659 S.E.2d at 767 (2008).  The court must view the facts and all permissible inferences flowing from them "in the light most favorable to the" non-moving party.  *Id.* at 762, 659 S.E.2d at 767.

{16}    A Section 75-1.1 claim requires showing an unfair or deceptive act or practice, in or affecting commerce, that proximately caused plaintiff's injury. *Bumpers v. Cmty. Bank of N. Va.*, __ N.C. __, 747 S.E.2d 220, 226 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)).   The dispositive issue here is whether the complaint presents a claim which is "in or affecting commerce."

{17}    This court is bound by the interpretation our Supreme Court has given this statutory language, including its definition of "commerce" as being limited to

---

[2] The court may consider whether a pleading states a claim upon which relief may be granted on a Rule 12(c) motion.  N.C. Gen. Stat. § 1A-1, Rule 12(h)(2).

[3] Because it dismisses the claim on other grounds, the court need not determine whether the statute of limitations would bar Plaintiffs' Section 75-1.1 claim.

"business activities," defined as "the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase or sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991) (affirming Rule 12(b)(6) dismissal of section 75-1.1 claim premised on unfair or deceptive acts related to capital raising devices); *see also, e.g.*, *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357, 578 S.E.2d 692, 694 (2003). The Supreme Court later explained that Section 75-1.1 regulates only "a business's regular interactions with other market participants[,]" not "internal conduct of individuals within a single market participant." *White v. Thompson*, 364 N.C. 47, 51, 53, 691 S.E.2d 676, 679–80 (2010). As a result, when the unfair or deceptive conduct alleged only affects relationships within a single business or market participant, and not dealings with other market participants, that conduct is not "in or affecting" commerce within the meaning of Section 75-1.1, even if other market participants may be indirectly involved in the unfair or deceptive acts. *See id.* at 54, 691 S.E.2d at 680 (rejecting argument that involvement of outside persons and entities in transactions at issue supported Section 75-1.1 claim when unfair or deceptive conduct occurred only between business partners).

{18}  The court recognizes the broad remedial policy underlying Chapter 75's reach, but it cannot accept policy arguments which extend beyond the pronouncements of our Supreme Court. Significantly, both the *HAJMM Co.* and *White* majority opinions were issued over vigorous dissents that advocated a more expansive reach for Chapter 75's "in or affecting commerce" requirement grounded in Chapter 75's broadly stated statutory purpose.

{19}  The Supreme Court's refusal in *White* to allow indirect involvement of other market participants to trigger liability under Section 75.1.1 forecloses Plaintiffs' argument here that the involvement of an investment bank and another potential acquirer in the merger process provides a sufficient factual basis from which the court could conclude Plaintiffs' claim is "in or affecting commerce." Nor

does this court's earlier ruling in *Wilkie v. Stanley,* which concerned a partner in an investment advising partnership improperly soliciting the partnership's clients for his own, separate business, support Plaintiffs' argument. *See* 2011 NCBC LEXIS 11, at \*3–\*6, \*14–\*15 (N.C. Super. Ct. Apr. 11, 2011). While *Wilkie* involved an "intra-corporate" dispute between two partners, the unfair acts alleged—improper solicitation of customers—clearly occurred in the broader marketplace and "impact[ed] other market participants." *See* 2011 NCBC LEXIS 11, at \*15. Similarly, in *Sara Lee Corp. v. Carter,* the dispute in part dealt with the employment contract between the parties, but the facts extended to the employee's undisclosed self-dealing by selling parts and service through companies which he had organized. 351 N.C. at 28–30, 519 S.E.2d at 309–10 *cited in Wilkie*, 2011 NCBC LEXIS 11, at \*15. Reaffirming *HAJMM Co.*'s holding that "regular, day-to-day activities" in the marketplace are covered by Chapter 75, the *Sara Lee* Court noted that these sales transactions with the other companies were "regularly conducted . . . [transactions] in a business setting[.]" *See id.* at 32–33, 519 S.E.2d at 311–12.

{20} Applying these North Carolina Supreme Court precedents, the court concludes that the allegations of the Complaint, accepted as true and construed in Plaintiffs' favor, do not allege or imply that the unfair or deceptive conduct of which they complain is "in or affecting commerce" as required by Section 75-1.1. Rather, the alleged breaches of fiduciary duty owed to the common shareholders and the misrepresentations complained of were matters internal to Engineous and did not concern the company's interaction with other market participants in its "regular, day-to-day activities."[4]

---

[4] Because the claim is not "in or affecting commerce," the court need not separately resolve the disputes between the Parties as to whether: (1) any breach of fiduciary duty must be considered a *per se* violation of Section 75-1.1; or (2) the claim further falls outside of Section 75.1.1 as a securities or capital-raising transaction.

## III. CONCLUSION

{21}    Accordingly, Plaintiffs have failed to state a claim under Section 75-1.1.  For the foregoing reasons, Defendants' Motion is GRANTED as to Plaintiffs' claim for unfair or deceptive trade practices pursuant to Section 75-1.1.

{22}    After the Parties' submission of an early discovery plan on or before February 7, 2014, the court will issue a further order as to the scope of discovery to be pursued and a schedule for further briefing and argument on the issue of whether Plaintiffs' other claims are barred by application of any statute of limitations.

IT IS SO ORDERED, this the 28th day of January, 2014.