Tong v. Dunn, 2012 NCBC 29.

STATE OF NORTH CAROLINA

COUNTY OF ORANGE

SIU S. TONG, et al.,

          Plaintiffs,

     v.

DAVID DUNN,  TIMOTHY
KRONGARD, ED MASI, SOPHIA
WONG and JANET WYLIE,

          Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 1522

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON
INDIVIDUAL DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS**

{1}    THIS MATTER is before the court on the motion by Defendants David Dunn, Timothy Krongard, Ed Masi, Sophia Wong, and Janet Wylie (collectively, "Individual Defendants"), styled Motion for Judgment on the Pleadings ("Motion"), brought pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule" or "Rules"), by which they seek to dismiss the individual claims of Plaintiff Siu S. Tong ("Tong") by application of *res judicata*.  For the reasons stated below, the Motion is GRANTED.

> *Robinson & Lawing, LLP by Michael L. Robinson, H. Stephen Robinson, and Kurt A. Seeber;  Arrowood Peters, LLP by Raymond P. Ausrotas,* pro hac vice*; Todd & Weld LLP by David Rich,* pro hac vice, *for Plaintiffs.*

> *Kilpatrick Townsend & Stockton LLP by Gregg E. McDougal, John M. Moye, and Michael A. Kaeding,* pro hac vice, *for Individual Defendants.*

Gale, Judge.

## I. SUMMARY OF DECISION

{2} Plaintiffs are each former holders of Engineous Software, Inc. ("Engineous") common stock. Tong is also a founder and former Engineous director. Plaintiffs collectively filed this Action ("Present Action") in Orange County Superior Court nine days after Tong had separately filed an Action ("Initial Action") in Wake County in which he was the sole Plaintiff. Both Actions relate to a merger transaction (the "Merger") through which Engineous was acquired by Dassault Systemes Simulia Corp. ("Dassault"). In this action, Plaintiffs contend they suffered monetary damages because the Merger unfairly enriched Individual Defendants and preferred shareholders. Plaintiffs complain of alleged breaches of fiduciary duty by Individual Defendants, liability for which they contend was imputed to Defendants ENG Acquisition, Inc. and Engineous Software, Inc. ("Corporate Defendants") either by agency or because they aided and abetted breaches of fiduciary duty by Individual Defendants. The court, by its March 19, 2010 Order, dismissed all claims against Corporate Defendants. Additional facts are stated in that Order.

{3} The Initial Action was removed from Wake County Superior Court to the United States District Court for the Eastern District of North Carolina. Claims against Individual Defendants stated in the Amended Complaint in the Initial Action were voluntarily dismissed with prejudice. The Initial Action focuses on Tong's allegations that he was fraudulently induced to enter agreements that were necessary to allow the Merger to close.

{4} In the Initial Action, Tong did not expressly state the same causes of action for breach of fiduciary duty which Plaintiffs state in the Present Action. However, Tong alleged many common facts in both Actions and in the Initial Action he clearly characterized actions by Individual Defendants as breaches of duty causing injury to common shareholders.

{5}    The voluntary dismissal with prejudice unquestionably resolved with finality those causes of action that were dismissed.[1]  The Motion raises the issue of whether the dismissal further precludes subsequent litigation of causes of action not expressly stated in the Initial Action but which could have been stated and would have been supported by the factual allegations stated.  In certain instances, the doctrine of *res judicata* promotes judicial economy by precluding a litigant's right to split claims.  The questions here are whether this case presents such circumstances, and if so, whether Individual Defendants acquiesced in the claim splitting so as to be barred from use of the doctrine of *res judicata.*

{6}    Tong has offered no reason that he could not have joined all claims in one action.  There is no basis to conclude that he was not aware of all facts pled in the Present Action when he filed the Initial Action nine days earlier.  Rather, Tong opposes the Motion by asserting that the two suits represent actions to recover for different injuries so that he has not impermissibly split claims and the adjudication of the first suit does not preclude litigation of the second.   In summary, he asserts that the Initial Action was to collect damages for wrongs suffered only by him individually, including breaches of an employment agreement and promises to pay "carve-out" compensation; and the Present Action is to collect losses of value in his common stock along with his fellow common shareholders.

{7}    While these injuries can be conceptually distinguished, both flow from a single course of conduct by which Tong alleges Individual Defendants misused their fiduciary positions and manipulated facts to complete the Merger for their own interests.  Essential facts adequate to plead an actionable claim of breach of fiduciary duty were stated in the Initial Action.   Issues related to those claims were then raised by the pleadings even though causes of actions for such breaches were not explicitly stated.  The essence of Tong's two Actions is that Individual Defendants set out on a concerted course of action designed to complete the Merger, and that Individual Defendants simultaneously intended to buy Tong's consent

[1] Other claims against other Defendants were not dismissed when all claims against the Individual Defendants were dismissed with prejudice.

through false pretenses in order for the Merger to proceed and to extinguish rights of the common shareholders.

{8} Appellate decisions have addressed *res judicata* in a variety of fact specific scenarios, allowing for cogent arguments on both sides of the issue of whether claim preclusion should be applied to the facts of this case. Having carefully considered these precedents, as well as the thorough briefs and argument of counsel, the court concludes that *res judicata* applies on the particular facts of this case, and that the adjudication of the Initial Action by the voluntary dismissal with prejudice precludes Tong's litigation of the Present Action.

## II. PROCEDURAL HISTORY

{9} Tong filed the Initial Action in Wake County Superior Court on July 11, 2011, styled *Tong v. Dassault Systemes Simulia Corp., Engineous Software, Inc, Janet Wylie, Edward Masi, Tim Krongard, David Dunn, Sophia Wong, and Charles Johnson*. The Initial Action was removed to the United States District Court for the Eastern District of North Carolina (Civ. Action No. 5:11-cv-429). Tong then filed an Amended Complaint. The causes of action naming Individual Defendants were voluntarily dismissed with prejudice on October 7, 2011.

{10} The Complaint in the Present Action was filed in Orange County Superior Court on July 20, 2011. The matter was designated as a Complex Business Case by Chief Justice Sarah Parker on August 29, 2011 and assigned to the undersigned on September 2, 2011. Individual Defendants filed their Answer on September 19, 2011 and their Amended Answer on October 24, 2011. Individual Defendants filed their Motion on November 30, 2011. Corporate Defendants were dismissed by the court's March 19, 2012 Order.

{11} The Motion has been fully briefed and the court heard oral argument. The Motion is therefore ripe for disposition.

## III.  FACTUAL BACKGROUND

{12}  The court does not make findings of fact on a 12(c) motion.  *Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952).  The court summarizes those facts established by the pleadings when construed favorably to Tong with reasonable inferences in his favor in order to provide context for the Motion and the court's ruling.  *See Vereen v. Holden*, 121 N.C. App. 779, 468 S.E.2d 471 (1996).

{13}  The Complaints in both the Initial Action and the Present Action expressly recite that their claims arise from the Merger.  The Initial Action concentrates on Tong's claim that he was fraudulently induced to enter into an employment agreement necessary to allow the Merger to proceed, including a promise that he would receive monies from a "carve-out" fund.[2]

{14}  The Present Action concentrates on the Merger's wash-out of common shareholders.   Plaintiffs complain that Individual Defendants who were preferred shareholder directors or officers breached their fiduciary duties when protecting their own interests.  Plaintiffs complain that Individual Defendants failed to: (1) sufficiently consider common shareholder interests in negotiating and consummating the Merger; (2) delay the sale until after the roll-out of Engineous' new product, FIPER; (3) adequately consider Tong's warnings; and (4) adequately value the company before agreeing to the Merger.[3]

{15}  Clearly, there are differences in the two Complaints.  But there is also substantial overlap in the factual allegations in the two Actions.   The allegations of the Initial Complaint clearly complain of preferences to preferred shareholders at the expense of common shareholders.  With the Complaints having been filed nine days apart with such common allegations, Tong obviously intentionally chose to split his individual contract claims and his claims as a common shareholder into two separate actions.  Tong asserts that his allegations in the Initial Action regarding harm to common shareholders were not essential but were only background.  Individual Defendants contend instead that the factual allegations

---

[2] *See* Exh. A to Amended Answer, Amended Complaint ¶¶ 1, 256-352.
[3] Compl. ¶¶ 65, 66, 67, 70, 71, 74, 76.

clearly raised issues materially related to the claims in the Present Action and are support *res judicata*.

{16} In support of their position, Individual Defendants provided a side-by-side comparison of factual allegations in the two Actions. The court has separately conducted its own careful comparison, but recites the chart Individual Defendants submitted for a convenient summary. The chart is set out below.

| The Initial Action | The Present Action |
|---|---|
| 63. Plaintiff Tong was elected by the common stockholders to represent their interests on the Board of Directors. | 2. [Tong] served on Engineous's board as a director nominated to represent the interests of its common shareholders. |
| 99. In early spring 2006, the Engineous Board of Directors voted to hire an investment banking firm to explore opportunities to sell the company. | 57. In the early spring of 2006, the Engineous Board of Directors. . . voted to hire an investment banking firm to explore opportunities to sell the company. |
| 101. Defendant Krongard stated that he would not support the sale of Engineous if the price for the sale of the company fell below $60 million. | 58. Defendant Krongard viewed a sale price below $60 million as not being in the best interests of Engineous or its shareholders. |
| 102. Defendant Krongard told Plaintiff that he would work to block the sale of Engineous if the valuation was too low. | 60. Defendant Krongard stated that he would work with Mr. Tong, the director elected by the common shareholder and founder of Engineous, to block any sale of the valuation was too low. |
| 103. Wachovia Bank, whose representatives valued Engineous as having a sale price between $100 and $120 million dollars, was selected as the investment banking firm to find a buyer for Engineous. | 59. Wachovia Bank was selected as the investment banking firm, in part based upon its claim that it would bring non-traditional buyers to compete for Engineous's assets and its oral projection of a sale price between $100 million - $120 million. |
| 104. After several months of work, Wachovia was unable to generate proper sales offers and turned to Plaintiff Tong for help. | 62. Wachovia Bank was not able to generate the competition as promised and turned to Mr. Tong for help. |
| 105. Through Plaintiff Tong's efforts, five potential buyers expressed interest in the sale, including two large companies, Siemens and Defendant DSS. | 63. Through Mr. Tong's efforts, four well known potential buyers eventually expressed interest in a potential purchase of Engineous, and two large acquirers entered the bidding process, one of which was Dassault. |
| 106. The Investor Defendants had decided to effect a quick sale of Engineous. | 70. [The] preferred stock owning directors, including Individual Defendants, had expressed a self-serving need to exit quickly, despite their recognition that the company was not in a strong or its best position to sell. |
| 108. Despite Plaintiff's assistance in finding potential buyers, the Board of Directors (including the Investor Defendants) voted to effectively remove Plaintiff Tong from interaction with potential buyers. | 64. Despite his assistance in moving the process forward through that date, a special meeting of the Board of Directors was held in the fall of 2007 to effectively cut off Mr. Tong's interaction with potential buyers. |

| | |
|---|---|
| 110. At this September 2007 meeting, a heated debate took place regarding the rights of the preferred versus the common shareholders. | 65. At one meeting of the full board in the fall of 2007, a heated debate took place over the rights of preferred versus common shareholders. . . |
| 111. Plaintiff Tong. . . insisted that common stock stockholders should be properly compensated if the company were sold. | 68. [Defendants'] individual interests . . . would drive the decision making process going forward (casting aside the common shareholders' interests). . . <br><br> 70. . . . Mr. Tong had specifically requested that the Board consider the fair treatment of all stockholders. . . |
| 112. Defendant Dunn explicitly stated at this meeting that the preferred shareholders were ahead of the common shareholders. | 65. . . . Defendant Dunn stated that since the preferred shareholders "are ahead" of the common shareholders. |
| 113. The minutes of this Board meeting were intentionally drafted to the benefit of the Investor Defendants to delete references to the debate over the rights of common shareholders. | 66. The minutes of these board meetings were drafted in such a manner as to hide the issue that certain board members were placing their own interests ahead of common shareholders. . . |
| 114. Plaintiff Tong refused to sign off on the minutes of the Board meeting because of this omission. | 68. Mr. Tong refused to sign off on the board minutes for one of the key board meetings from this time, citing the omission of many statements . . . |
| 116. Plaintiff Tong warned the Board (including the Investor Defendants) that, at the price being discussed, the preferred stock shareholders would receive substantial compensation and the common stock shareholders would receive very little. | 70. Mr. Tong had specifically requested that the Board consider the fair treatment of all stockholders . . . <br><br> 76. . . . the Board should be looking into how to improve exit value for all shareholders, including the Common Shareholders. |
| 117. Plaintiff Tong explained they should wait longer to sell the company because Engineous had a new software product known as "FIPER" which would soon be sold to pilot customers, would generate revenues, and would maximize the company's potential sale price. | 71. Mr. Tong explained that by waiting a bit longer, Engineous' new enterprise product, FIPER, would be tested by approximately a dozen pilot customers and the resulting "roll-out" could increase and maximize the company's potential sale price. |
| 118. Plaintiff Tong repeatedly warned the Investor Defendants that their failure to improve the value of the company could damage the common shareholders. | 78. Mr. Tong, considering the interest of shareholders including the Common Shareholders, suggested that the Board wait for a competitive purchase offer from another buyer. |
| 129-130. In early 2008, the Engineous Board of Directors voted to sign a letter of intent to sell Engineous to DSS for approximately $40 million dollars. Plaintiff Tong voted against signing the letter of intent. | 76. Mr. Tong did not vote in favor of either the Dassault or Siemens letter of intent . . . |
| 143-44. Defendant Krongard was now willing to sell Engineous for approximately $40 million dollars. . . Despite his earlier commitment to protect the common stockholders, Defendant Krongard had been persuaded by other Investor Defendants about the need to sell Engineous. | 78-80. After receiving the $40 million offer from Dassault, "the Board showed little interest in undertaking any actions to negotiate a higher sale price which might improve upon the Common Shareholders' rights and interests. . . . [they] were more interested in proceeding to a closing that would benefit only themselves." |

| | Thus, the Defendants "proposed that the Board accept the sale price." |
|---|---|
| 148. "Plaintiff Tong was reluctant to sell Engineous" and "felt the sale was not timed properly to obtain maximum value for the company. . . . Plaintiff wanted to protect the common shareholders in any transaction that occurred."<br><br>161. On June 10, 2008, because of his concerns regarding the manner in which the proposed sale was going to affect the common shareholders, Plaintiff Tong resigned from the Engineous Board of Directors. | 78. "Mr. Tong, considering the interests of all shareholders including the Common Shareholders, suggested that the Board wait for a competitive purchase offer from another potential buyer." |
| 205. On July 21, 2008, the transaction merging Engineous and DSS was closed. | 83. . . . A merger deal closed on or about July 21, 2008. |

## IV. STANDARD OF REVIEW

{17} The function of Rule 12(c) is to "dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit" as a matter of law. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). In considering a motion for judgment on the pleadings under Rule 12(c), the court will grant the motion if "no issue of material fact remains to be resolved" and "the movant is entitled to judgment as a matter of law." *Groves v. Cmty. Hous. Corp. of Haywood Cnty.*, 144 N.C. App. 79, 86–87, 548 S.E.2d 535, 541 (N.C. App. 2001) (citations omitted). "In deciding such a motion, the trial court looks solely to the pleadings. The trial court can only consider facts properly pleaded and documents referred to or attached to the pleadings." *Reese v. Mecklenburg County*, 200 N.C. App. 491, 497, 685 S.E.2d 34, 37-38 (2009) (*citing Wilson v. Development Co.*, 276 N.C. 198, 206, 171 S.E.2d 873, 878 (1970)). The court must "view the facts and permissible inferences in the light most favorable to the non-moving party, taking all well-pleaded factual allegations in the non-moving party's pleadings as true." *Id.*

## V. ANALYSIS

{18} Various doctrines regulate when "claims" are or are not proper. There is, however, no precise and common definition of the term "claim" as employed by

these doctrines. The term is used in rules and in case law in various contexts. For example, the legal doctrines of *res judicata* or collateral estoppel are referred to as "claim preclusion." Civil Procedure Rule 13 refers to compulsory and permissive "claims." Civil Procedure Rule 18 refers to "claims and remedies." Cases define a prohibition on "claim splitting." The Motion requires the court to determine whether Tong's "claims" in the Present Action are barred by the dismissal of "claims" in the Initial Action. The exercise is not simply a matter of determining whether Tong specifically stated the same causes of action stated as "claims for relief" in the two Actions. The doctrine of *res judicata* reaches issues raised by the pleadings that reasonably could and should have been brought based on stated factual allegations.

{19} Although the federal courts and the various states have somewhat different approaches to the doctrine, the principle of *res judicata* is a firmly entrenched judicial doctrine. It "is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy . . . ." *Eastman Kodak Co. v. Atlanta Retail, Inc.*, 456 F.3d 1277, 1284 (11th Cir. 2006) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552, 559 (1979)). Application of the doctrine relieves litigants of the cost and confusion of multiple lawsuits, conserves judicial resources, and encourages reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 515, 66 L. Ed. 2d 308, 311 (U.S. 1980); *see, e.g.*, *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155, 168 (2008), 18-131 James Wm. Moore et al., *Moore's Federal Practice* § 131.21 (2012).

{20} Like the United States Supreme Court, the North Carolina Supreme Court has noted that *res judicata* "serves the dual purposes of protecting litigants from having to relitigate previously decided matters and promoting judicial economy[.]" *Bockweg v. Anderson*, 333 N.C. 486, 491, 428 S.E.2d 157, 161 (1993). Therefore, a final judgment on the merits in a prior action in a court of competent jurisdiction precludes a second suit involving the same claim between the same parties. *Id.* at 491, 428 S.E.2d at 161.

{21} As a general proposition, the elements of *res judicata* are that it bars a subsequent action when: (1) there is a final judgment on the merits; (2) between the same parties; and (3) involving the same claim. In this case, the Parties concede that the October 7, 2011 voluntary dismissal constitutes a final judgment on the merits of the Initial Action. They agree that Tong and Individual Defendants were Parties to both Actions. The Motion then turns on resolving their disagreement with respect to whether the two Actions present the same "claims" for *res judicata* purposes.

{22} The test for determining "same claims" for purposes of *res judicata* has not been definitively stated by our appellate courts. *Northwestern Financial Group, Inc. v. County of Gaston*, 110 N.C. App. 531, 537, 430 S.E.2d 689, 693 (1993). The federal courts and several state courts adopt what is referred to as the "transactional approach"[4] defined by Restatement of Judgments Second § 24 ("Section 24") which provides that a plaintiff must assert in a single action all rights arising out of a single transaction or series of transactions, determined by a pragmatic test. *See Bockweg*, 333 N.C. at 493–94, 428 S.E.2d at 162–63; *see also Northwestern*, 110 N.C. App. at 537–38, 430 S.E.2d at 693–94. The North Carolina Supreme Court was invited to adopt and apply Section 24 to the particular facts before it, but the court did not because it found that those facts fell outside the ambits of Section 24. *Bockweg,* 333 N.C. at 493–94, 428 S.E.2d at 162–63. The court did not necessarily reject applying the Section 24 approach to different facts. The North Carolina Court of Appeals later followed *Bockweg* but also found that the reasoning expressed by Section 24 was instructive even though it had not been expressly adopted by the North Carolina Supreme Court. *Northwestern*, 110 N.C. App. at 537–38, 430 S.E.2d at 693–94.

{23} *Bockweg* involved claims of medical negligence arising from a course of medical treatment. The court concluded that *res judicata* did not apply. In part,

---

[4] *See Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. Va. 2004), Restatement of Judgments Second § 24 (1982): "[A] valid and final judgment rendered in an action extinguishes the plaintiff's claim . . . includ[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

the court reasoned that the conduct of which plaintiff complained represented separate injuries and separate acts of negligence. The court further discussed that issues brought forward in the second action could not be said to have been raised by the pleadings in the first action when the relevant factual allegations had been expressly dismissed and severed from the first action. The court also was clearly influenced by the fact that the defendants acquiesced in the removal of those claims from the first action. *Bockweg*, 333 N.C. at 493, 430 S.E.2d at 162. [5]

{24} Nevertheless, *Bockweg* also confirms that a judgment precludes relitigation of issues when they are raised by the pleadings of the prior action. "A judgment is decisive of the points raised by the pleadings, or which might be properly predicated upon them." *Bockweg*, 333 N.C. at 492-93; 430 S.E.2d at 162.

{25} The courts have leaned toward a standard based on materiality and relevance, and focus as well on whether facts necessary to the claims in the second action were known to the plaintiff at the time of the first action. "A judgment operates as an estoppel not only as to all matters actually determined or litigated in the proceeding, 'but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination.'" *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730; *see Moody v. Able Outdoor, Inc.*, 169 N.C. App. 80, 87, 609 S.E.2d 259, 263 (2005) (indicating "[i]t is well settled that under principles of *res judicata* a final judgment is conclusive 'not only as to all matters actually litigated and determined, but also as to matters which could properly have been litigated and determined in the former action'"); *see also Gaither Corp. v. Skinner*, 241 N.C. 532, 535, 85 S.E.2d 909, 911 (1955) (stating that *res judicata* "is broader in its application than a mere determination of the questions involved in the prior action, such that the judgment bar extends not only to matters

---

[5] *See also* Restatement of Judgments Second § 26 (1982), which states:
"When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant: . . . [t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein . . ."

actually determined, but also as to other matters which . . . could have been presented for determination in the prior action").

{26} Courts then scrutinize the pleadings from each case with a particular focus on whether the actions "stem from the same relevant conduct." *Skinner v. Quintiles Transnational Corp.*, 167 N.C. App. 478, 483, 606 S.E.2d 191, 194 (2004). A final judgment bars not only all matters actually determined or litigated in the prior proceeding, but also all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination. *Id.* at 482, 606 S.E.2d at 193-94.

{27} The principle underlying *res judicata* is sometimes expressed as a prohibition against claim splitting. "The common law rule against claim-splitting is based on the principle that all damages incurred as a result of a single wrong must be recovered in one lawsuit." *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161. In *Gaither*, the North Carolina Supreme Court described the rule as follows:

> [T]he rules which preclude splitting of a cause of action or the relitigation of the same cause of action between the same parties are applicable where a cause of action is adjudicated upon, even though all the relief to which the party asserting the cause of action is entitled is not requested or granted in such action. The general rule is that the whole cause of action must be determined in one action, and where an action is brought for a part of a claim, a judgment obtained in the action ordinarily precludes the owner thereof from bringing a second action for the residue of the claim.

*Gaither*, 241 N.C. at 535, 85 S.E.2d at 911.

{28} A plaintiff may not avoid application of *res judicata* by simply shifting legal theories or asserting a new or different ground for relief on a common set of facts. *Rodgers,* 76 N.C. App at 30, 331 S.E.2d at 735. Neither can a party recover for the same injury based on two different statutory or common law schemes of recovery, arising from the same conduct. *See generally Skinner*, 167 N.C. App. 478, 606 S.E.2d 191.

{29} However, the mere instance that there are two successive suits sharing common facts does not alone mandate applying *res judicata.* Separate or successive

lawsuits are appropriate in certain situations. A second action involving an altogether different claim arising from the common facts will not be barred if the facts underlying the claim were not actually litigated and determined in the original action. *Country Club of Johnston County, Inc. v. United States Fid. & Guar. Co.*, 150 N.C. App. 231, 239, 563 S.E.2d 269, 275 (2002) (internal citations and quotations omitted). And, as noted, the North Carolina Supreme Court approved successive actions by a plaintiff who suffered multiple wrongs arising from successive acts of negligence. *Bockweg*, 333 N.C. at 492, 428 S.E.2d at 161. Further, a second action will not be barred when it could not have with reasonable diligence been brought at the time the first action was filed, such as when a predicate "right to sue" letter had not been issued. *Skinner*, 167 N.C. App. 478, 606 S.E.2d 191. Likewise, *res judicata* will not bar claims that rest on facts which were not with reasonable diligence known at the time of the earlier adjudication. *Northwestern Fin. Group v. County of Gaston*, 110 N.C. App. 531, 538-539, 430 S.E.2d 689, 694 (1993).

{30} Here, it is apparent that: 1) all of the facts relevant to Tong's claims stated in the Present Action were known to him when the Initial Action was filed only nine days earlier; (2) the Initial Action asserts at least twenty-one common factual allegations material and relevant to the fiduciary duty claims; and (3) Tong has identified no compelling reason why he could not have asserted all his claims in the Initial Action.

{31} The court concludes that issues Tong now seeks to litigate in the Present Action were raised by the pleadings in the Initial Action and *res judicata* applies. Rather than asserting different injuries arising from independent successive acts, Tong complains that Individual Defendants set out on a concerted course of action designed to complete the Merger, including buying Tong's consent through false pretenses and at the same time extinguishing the rights of common shareholders, including Tong's. While other shareholders that were not party to the Initial Action and are not then subject to *res judicata,* Tong's claims are barred by his dismissal of the Initial Action with prejudice.

{32} The court has considered whether Individual Defendants may have acquiesced in Tong's claim splitting when they did not initially challenge one action based on the pendency of the other. *See Bockweg*, 333 N.C. at 496, S.E.2d at 164. The court concludes that they did not.

## VI. CONCLUSION

{33} For the reasons stated, Tong's claims in this Action are barred by application of *res judicata.* Accordingly, Individual Defendants' Motion is GRANTED. The Present Action shall proceed on the claims of the remaining Plaintiffs.

IT IS SO ORDERED, this 18th day of May, 2012.