DSM Dyneema, LLC v. Thagard, 2015 NCBC 47.

STATE OF NORTH CAROLINA

GASTON COUNTY

DSM DYNEEMA, LLC,

            Plaintiff,

v.

JAMES THAGARD, Ph.D.;
HONEYWELL SPECIALTY
MATERIALS, LLC; HONEYWELL
ADVANCED COMPOSITES, INC.;
and HONEYWELL
INTERNATIONAL, INC.,

            Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
13 CVS 1686

ORDER AND OPINION

{1}    **THIS MATTER** is before the Court upon Defendants Honeywell Specialty Materials, LLC, Honeywell Advanced Composites, Inc., and Honeywell International, Inc.'s (collectively, the "Honeywell Defendants") Motion for Judgment on the Pleadings (the "Honeywell Motion"); Defendant Dr. James Thagard's ("Thagard") Motion for Judgment on the Pleadings (the "Thagard Motion"); the Honeywell Defendants' Motion for Protective Order (the "Motion for Protective Order"); and Plaintiff DSM Dyneema, LLC's ("Plaintiff" or "DSM") Motion to Compel Responses to Requests for Production (the "Motion to Compel") (collectively, the "Motions"). After review of the Motions, briefs in support of and in opposition to the Motions, and the arguments of counsel at a hearing held on January 21, 2015, the Court **DENIES** the Honeywell Motion, **GRANTS in part** and **DENIES in part** the Thagard Motion, **GRANTS in part** and **DEFERS in part** DSM's Motion to Compel, and **DENIES in part** and **DEFERS in part** the Honeywell Defendants' Motion for Protective Order.

*McCullough Ginsberg Montano & Partners LLP by Theodore McCullough and C. Dino Haloulos, and Bell, Davis & Pitt, P.A. by Edward B. Davis and Kevin G. Williams for Plaintiff DSM Dyneema, LLC.*

*Kirkland & Ellis LLP by Craig S. Primis and Daniel A. Bress, and Erwin, Bishop, Capitano & Moss, P.A. by Joseph W. Moss, Jr., and Lex M. Erwin for Defendants Honeywell Specialty Materials, LLC, Honeywell Advanced Composites, Inc. and Honeywell International, Incorporated.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C. by Robert A. Sar, Phillip J. Strach, and J. Allen Thomas for Defendant James Thagard, Ph.D.*

Bledsoe, Judge.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

{2}  Relevant factual and procedural background of this case is recited in detail in *DSM Dyneema, LLC v Thagard* (the "P.O. Order"), 2014 NCBC 50 (N.C. Super. Ct. Oct. 17, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_50.pdf (denying motion to compel and granting motion for protective order). The Court, however, does not make findings of fact on motions for judgment on the pleadings under Rule 12(c), but only summarizes the pleaded facts giving all reasonable inferences to the non-moving party. *Erickson v. Starling*, 235 N.C. 643, 657, 71 S.E.2d 384, 394 (1952); *Tong v. Dunn*, 2012 NCBC 29 ¶ 12 (N.C. Super. Ct. May 18, 2012), http://www.ncbusinesscourt.net/opinions/2012_NCBC_29.pdf, *rev'd on other grounds*, 2013 N.C. App. LEXIS 1303 (N.C. Ct. App., Dec. 17, 2013).

{3}  Plaintiff and the Honeywell Defendants are competitors in the ballistic performance material production industry and historically have competed for United States Department of Defense contracts involving the development of fibers used in enhanced combat helmets ("ECH"). Plaintiff specifically developed its ECH designs for use in combat helmets manufactured by Ceradyne, Inc. ("Ceradyne").

{4}  In 2010, the Honeywell Defendants hired Defendant Thagard, who was Plaintiff's former chief scientist and technical leader and previously oversaw Plaintiff's ECH program. In February 2013, Ceradyne ended its relationship with Plaintiff and awarded an ECH contract to the Honeywell Defendants.

{5}  Thereafter, on August 2, 2013, Plaintiff filed its Amended Complaint in Gaston County Superior Court, asserting claims against the Honeywell Defendants and/or Defendant Thagard for misappropriation of trade secrets under N.C. Gen.

Stat. § 66-152 et seq. ("TSPA"), tortious interference with existing and prospective business relations, tortious interference with contract, conversion, breach of fiduciary duty, breach of contract, unjust enrichment, and unfair and deceptive trade practices under N.C.G.S. § 75-1.1 ("UDTP").

{6} Plaintiff identified its trade secret material in its Amended Complaint as follows:

> [d]uring the course of his employment with DSM, Thagard was exposed to confidential and proprietary business information, trade secrets, and know-how of DSM, including, but not limited to, technical information and formulas, proprietary product development information and technical know-how regarding the Dyneema HB80 UHMWPE material and regarding the incorporation of Dyneema HB80 into helmets for optimal performance, proprietary development tools, proprietary software applications, design details, product design and application (including, but not limited to, resin types, matrix characteristics, fiber properties, number of plies, air content, stiffness, and aging), processing know-how, manufacturing know-how (including, but not limited to, creep forming, vacuum processing, deep draw, optimal temperature and pressure, and adhesives), matrix stiffness, ratio of resin to fiber, interlaminar strength, areal density, elasticity, flexural properties, tenacity, matrix interface, role of coefficient of thermal expansion, prevention of delamination and other deformation, test methods and results, marketing and sales strategies and practices, pricing and contractual details for customers, customer profits, business costing data, customer correspondence, business plans, area plans, license reviews, proposed applications, meeting minutes, marketing data, customer lists, prospect lists, competitive bid information, employee lists, and internal strengths and weaknesses, among other information (the "Trade Secrets"). DSM's Trade Secrets also include the results of DSM's resin and materials testing program, which include the optimal number of filaments per ply to increase performance, optimal resin types, proprietary information and technical know-how regarding optimal temperature, and proprietary information and technical know-how regarding effective pressure. DSM's Trade Secrets were developed, used, and expanded while Thagard oversaw DSM's ECH Project and the development of DSM's ECH product.

(Am. Compl. ¶ 14.) [1]

[1] DSM contends that the Honeywell Defendants and Thagard's Motions for Judgment on the

{7}     DSM subsequently sought discovery of the Honeywell Defendants.  The Honeywell Defendants objected to DSM's discovery requests as overbroad, vague, and unduly burdensome and refused to produce responsive documents because Plaintiff had not yet "identified with any reasonable degree of particularity the confidential trade secrets that it claims to be protecting through this action . . . ."  After the parties were unable to reach agreement, DSM filed a Motion to Compel and the Honeywell Defendants filed a Motion for Protective Order.  In an Order and Opinion entered on October 17, 2014, the Court concluded that DSM had not identified its trade secrets with sufficient particularity at the pre-discovery stage of the litigation to require the Honeywell Defendants to produce their confidential and trade secret information in discovery.  *P.O. Order*, 2014 NCBC 50.  The Court required DSM to supplement its responses to the Honeywell Defendants' discovery requests.  *Id.* at ¶ 27.

{8}     DSM supplemented its trade secret identification on November 20, 2014, and simultaneously requested that the Honeywell Defendants respond to DSM's Discovery Requests[2] and divulge relevant trade secret information.  The Honeywell Defendants refused to respond, citing their belief that DSM had not adequately complied with the Court's *P.O. Order*.  Subsequently, on December 10, 2014, DSM filed its Renewed Motion to Compel and Request for Expedited Procedures.  The Honeywell Defendants followed suit and filed a Motion for Judgment on the Pleadings and a Motion for Protective Order on December 22, 2014.  Upon consent of the parties, the Court set a briefing schedule, which required that briefing of DSM and the Honeywell Defendants' Motions be completed on January 16, 2015.

Pleadings should be considered as Motions for Summary Judgment because the Court must consider DSM's supplements to its trade secret identification contained in the Amended Complaint.  The Court rejects this argument and considers only DSM's trade secret identification contained in the Amended Complaint in deciding the Defendants' respective Motions for Judgment on the Pleadings.

[2] DSM moves to compel, and the Honeywell Defendants move for protective order concerning, responses to (i) DSM's First and Second Sets of Request for Production, served April 1, 2014 and May 7, 2014, respectively, as modified by DSM's letter to the Honeywell Defendants on July 18, 2014, and (ii) certain of DSM's interrogatories to which the Honeywell Defendants have objected on the basis of DSM's allegedly insufficient identification of its trade secrets (collectively, "DSM's Discovery Requests").

The Court held a hearing on the DSM and Honeywell Defendants Motions on January 21, 2015, at which all parties were represented by counsel.

{9} On February 6, 2015, Thagard filed his Motion for Judgment on the Pleadings. Briefing on Thagard's Motion was completed on March 4, 2015. As Thagard's Motion is based largely on the same arguments advanced in the Honeywell Defendants' Motion for Judgment on the Pleadings, the Court dispenses with a hearing on Thagard's Motion for Judgment on the Pleadings. The Motions are now ripe for resolution, and the Court takes each Motion in turn.

II.

ANALYSIS

A. The Honeywell Motion

{10} "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761, 659 S.E.2d 762, 767 (2008) (observing "[j]udgments on the pleadings are disfavored in law"). "A complaint is fatally deficient in substance, and subject to a motion by the defendant for judgment on the pleadings if it fails to state a good cause of action for plaintiff and against defendant." *Bigelow v. Town of Chapel Hill*, 745 S.E.2d 316, 319 (N.C. Ct. App. 2013). The motion's purpose is "to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 322, 660 S.E.2d 577, 583 (2008). The Court may only consider "the pleadings and exhibits which are attached and incorporated into the pleadings." *Davis v. Durham Mental Health/Development Disabilities/Substance Abuse Area Auth.*, 165 N.C. App. 100, 104, 598 S.E.2d 237, 240 (2004). The Court "is required to view the facts and permissible inferences in the light most favorable to the nonmovant," *Bigelow*, 745 S.E.2d at 319, and should deny a Rule 12(c) motion if the complaint "gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and – by using the rules provided for obtaining pretrial discovery – to get

any additional information he may need to prepare for trial." *Id.* (quoting *Sutton v. Duke*, 277 N.C. 94, 104, 176 S.E.2d 161, 167 (1970)).

{11}   The Honeywell Defendants seek dismissal of DSM's Amended Complaint on the grounds that (1) DSM has failed to allege its trade secrets with sufficient particularity under North Carolina law, and (2) DSM has failed to allege a cognizable claim for misappropriation by relying upon a theory of inevitable disclosure rather than pleading facts showing that actionable misappropriation has occurred.

    i.   <u>Trade Secret Misappropriation</u>

{12}   A trade secret is defined in N.C. Gen. Stat. § 66-152(3) (2001) as follows:

> Business or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
>     a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
>     b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{13}   Misappropriation is defined as the "acquisition, disclosure, or use of a trade secret of another without express or implied authority or consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. Gen. Stat. § 66-152(1) (2001).

{14}   To determine what information should be treated as a trade secret under the TSPA, the Court should consider the following factors:

> (1) the extent to which the information is known outside the business;
> (2) the extent to which it is known to employees and others involved in the business;
> (3) the extent of measures taken to guard secrecy of the information;
> (4) the value of the information to business and its competitors;

(5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.

*TSG Finishing, LLC v. Bollinger*, 767 S.E.2d 870, 876 (N.C. Ct. App. 2014) (quotation and citation omitted).

{15} "To make a prima facie case of trade secret misappropriation, a plaintiff must show that a defendant: '(1) [k]nows or should have known of the trade secret; and (2) [h]as had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.'" *GE Betz, Inc. v. Conrad*, 752 S.E.2d 634, 649 (N.C. Ct. App. 2013). At the pleading stage, our courts require only that a plaintiff "identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Washburn*, 190 N.C. App. at 326, 660 S.E.2d at 585. It is not sufficient for a plaintiff to make "general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated." *Id.* at 327, 660 S.E.2d at 585–86. Additionally, a plaintiff must allege the acts by which the alleged misappropriation was accomplished. *Id.* at 327, 660 S.E.2d at 586.

{16} For its first argument in support of dismissal, the Honeywell Defendants contend that DSM's description of its trade secrets in the Amended Complaint is not sufficiently particular to apprise the Honeywell Defendants of what they are accused of misappropriating. This is so, according to the Honeywell Defendants, because the Court found as much in its *P.O. Order* denying DSM's motion to compel disclosure of the Honeywell Defendants' trade secret information. The Court disagrees.

{17} In the *P.O. Order*, the Court stated that "[t]he issue for decision on the Motions [to Compel and for Protective Order] is whether Plaintiff has identified the trade secret information it claims has been misappropriated with sufficient particularity *at this stage of the litigation to entitle Plaintiff to discovery of the*

*Honeywell Defendants' confidential information and trade secrets.*"  *P.O. Order*, 2014 NCBC 50 ¶ 2 (emphasis added).  The Court further explained that,

> In short, Plaintiff must do more *before discovery* of the Honeywell Defendants' confidential information and trade secrets is appropriate here.  Although '*sufficient particularity' at this stage* does not require Plaintiff to 'define every minute detail of its trade secrets down to the finest detail or require a mini-trial on misappropriation' *before Plaintiff is granted discovery of the Honeywell Defendants' trade secret information*, Plaintiff's identification must be sufficiently particular to put the Honeywell Defendants on notice of the *specific nature* of Plaintiff's trade secret claims and allow the Honeywell Defendants *and the Court to determine the relevance of Plaintiff's requested discovery.*"

*Id.* at ¶ 23 (emphasis added).  The Court's sole focus in the *P.O. Order* was the sufficiency of DSM's trade secret identification to permit discovery of the Honeywell Defendants' relevant confidential and/or trade secret information, not the sufficiency of DSM's trade secret identification for pleading purposes.

{18}  The level of specificity required of a plaintiff to survive a motion for judgment on the pleadings under Rule 12(c) is less than that required to permit discovery into an adversary's confidential and trade secret information.  *See, e.g., Le Bleu Corp. v. B. Kelley Enters.*, 2014 NCBC 65 (N.C. Super. Ct. Dec. 9, 2014), www.ncbusinesscourt.net/opinions/2014_NCBC_65.pdf  (holding plaintiff's trade secret identification sufficient under Rule 12(b)(6) but not for discovery of defendant's trade secrets).

{19}  The allegations in DSM's Amended Complaint, while not sufficiently particular to permit reciprocal discovery, are nonetheless more detailed and specific, and less sweeping and conclusory, than those allegations our courts have found to fail the pleading standard of Rule 12, *see, e.g., Washburn,* 190 N.C. App. at 327, 660 S.E.2d at 585–86 (holding insufficient "business methods; clients; their specific requirements and needs; and other confidential information pertaining to [plaintiff's] business"); *AECOM Tech. Corp. v. Keating*, 2012 NCBC 10 ¶ 21 (N.C. Super. Ct. Feb. 6, 2012), www.ncbusinesscourt.net/opinions/2012_NCBC_10.pdf (holding insufficient "customer lists, customer contact information, pricing

information and product information"), and are at least comparable to those identifications our courts have found to satisfy Rule 12's requirements, *see, e.g., Horner Int'l Co. v. McKoy*, 754 S.E.2d 852, 859 (N.C. Ct. App. 2014) (holding sufficient under Rule 12(b)(6) plaintiff's identification of "various raw materials and raw material treatments; extraction, filtration, separation, and distillation techniques; and methods for compounding of flavors, packaging, and plant utility. . . used in the production of flavor materials derived from seven specifically identified substances, such as cocoa, ginseng, and chamomile"); *S. Fastening Sys., Inc. v. Grabber Constr. Products, Inc.*, 2015 NCBC 40 ¶¶ 23–25 (N.C. Super. Ct. Apr. 28, 2015) www.ncbusinesscourt.net/opinions/2015_NCBC_40.pdf (holding sufficient under Rule 12(b)(6) "confidential customer information such as customer contact information and customer buying preferences and history . . . confidential freight information, sales reports, prices and terms books, sales memos, sales training manuals, commission reports, and information concerning SFS's relationship with its vendors"); *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc.*, 2015 NCBC 12 ¶ 29 (N.C. Super. Ct. Feb. 4, 2015), www.ncbusinesscourt.net/opinions/2015_NCBC_12.pdf (holding sufficient under Rule 12(b)(6) "compilations of information, methods, techniques, and processes that [it uses] in planning, organizing and managing all aspects associated with identifying appropriate shows for their clients, pricing and budgeting, procuring space, setting up booths, staffing booths during the show, tracking sales leads generated by each show, tearing down booths after each show"); *Le Bleu Corp.*, 2014 NCBC 65 ¶ 29 (holding sufficient under Rule 12(b)(6) "customer lists, pricing information, transaction histories, key contacts, and customer leads"); *Koch Measurement Devices, Inc. v. Armke*, 2013 NCBC 48 ¶ 19 (N.C. Super. Ct. Oct. 14, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_48.pdf (holding sufficient under Rule 12(b)(6) "customer lists, including names, contact persons, addresses, phone numbers . . . [customer] ordering habits, history . . . [and company] pricing and inventory management strategies"); *see also TSG*, 767 S.E.2d at 877 (recognizing in directing entry of preliminary injunction that particular steps in a

process may be trade secrets, not simply the process as a whole). As a result, the Court concludes that DSM's trade secret identification in the Amended Complaint is sufficiently particular to survive dismissal under Rule 12(c).

{20} The Honeywell Defendants also contend that dismissal is appropriate because DSM has failed to state a claim for misappropriation, arguing that DMS's claim is essentially based on a theory of inevitable disclosure,[3] a doctrine the Honeywell Defendants assert is not recognized in North Carolina.[4] (Honeywell's Reply Supp. 12(c) Mot., p. 9.)

{21} Although DSM's misappropriation claim clearly has an "inevitable disclosure" component to it—alleging that "it is clear that Defendants have misappropriated and will inevitably continue to misappropriate DSM's trade secrets," (Am. Compl. ¶ 76)—DSM's claim is based on more than simply the fact that Thagard had access to DSM's alleged trade secrets and then went to work for a competitor, as Defendants contend. (*See* Honeywell's Reply Supp. 12(c) Mot., p. 9.) To the contrary, DSM has alleged that Thagard was DSM's chief scientist and oversaw the development of its ECH program for DSM, (Am. Compl. ¶¶ 10–13); that prior to Thagard's employment with the Honeywell Defendants, "all of DSM's competitors in the ECH project, including Honeywell, failed the ballistics [testing phase of the ECH project]" and DSM's ECH design was the only design to pass the

---

[3] The Court of Appeals has described the inevitable disclosure doctrine as follows:

> In simplest terms, the [inevitable disclosure] doctrine applies when an employee who knows trade secrets of his employer leaves that employer for a competitor and, because of the similarity of the employee's work for the two companies, it is "inevitable" that he will use or disclose trade secrets of the first employer. *See* K. Roberson, *South Carolina's Inevitable Adoption of the Inevitable Disclosure Doctrine: Balancing Protection of Trade Secrets with Freedom of Employment*, 52 S.C.L. Rev. 895 (2001).

*Analog Devices, Inc. v. Michalski*, 157 N.C. App. 462, 470, 579 S.E.2d 449, 454 (N.C. Ct. App. 2003).

[4] This Court recently explained in *RCR Enters., LLC v. McCall*, 2014 NCBC LEXIS 69 ¶ 17 (N.C. Super. Ct. Dec. 19, 2014) that "the doctrine of "inevitable disclosure" has not yet been firmly adopted by the North Carolina courts, citing *Analog*, 157 N.C. App. at 470, 579 S.E.2d at 454—55 (declining to apply doctrine) and *Allegis Grp., Inc. v. Zachary Piper LLC*, 2013 NCBC 13 ¶ 53 (N.C. Super. Ct., Feb. 25, 2013), www.ncbusinesscourt.net/opinions/2013_NCBC_13.pdf (denying motion for preliminary injunction and discussing cases).

test, (Am. Compl. ¶ 30); that Thagard "impermissibly downloaded, transmitted, and/or copied DSM's Trade Secrets and confidential . . . information . . . from his company computer" prior to his departure from DSM, (Am. Compl. ¶ 21); that Thagard deleted emails and other information containing "vital data regarding DSM's ECH product and the ECH Project," (Am. Compl. ¶ 22); and that Defendants used DSM's trade secrets to win the ECH contract, (Am. Compl. ¶¶ 29, 35, 36). Based on its review of the Amended Complaint, the Court therefore concludes that DSM has alleged more than simply inevitable disclosure and that the Honeywell Defendants' argument is therefore unavailing.[5]

{22}    Accordingly, viewing the pleadings in the light most favorable to DSM, the Court concludes that DSM has satisfactorily pled its claim for misappropriation of trade secrets and that the Honeywell Defendants' Rule 12(c) Motion to dismiss this claim should be denied.

ii.  DSM's Other Claims

{23}    The Honeywell Defendants condition their contention that each of the claims in DSM's Amended Complaint should be dismissed under Rule 12(c) on their argument that DSM has failed to state a claim for trade secret misappropriation under North Carolina law.   Because the Court has rejected the Honeywell Defendants' argument, the Court concludes that the Honeywell Defendants' 12(c) Motion to dismiss DSM's other claims on this basis should likewise be denied.

B.  The Thagard Motion

{24}    Defendant Thagard also seeks dismissal of DSM's Amended Complaint, and incorporates by reference and adopts in their entirety the Honeywell Defendants' legal arguments for dismissal of the claims asserted jointly against the Honeywell Defendants and Thagard (*i.e.*, misappropriation of trade secrets, unjust enrichment, tortious interference with contract, conversion, tortious interference with existing and prospective business relations, UDTP, and injunctive relief).

---

[5] In light of its determination that DSM has not pled its misappropriation claim solely on a theory of inevitable disclosure, the Court declines to consider whether the doctrine of inevitable disclosure, if recognized in North Carolina, should be applied to these facts.

(Thagard's Br. Supp. 12(c) Mot., p. 1.) Because the Court has denied the Honeywell Defendants' Motion to Dismiss these claims, the Court concludes Thagard's Motion to Dismiss these same claims should be denied for the same reasons.

{25} Thagard also seeks dismissal of two claims DSM has asserted against him separately—for breach of contract and for breach of fiduciary duty.

{26} First, similar to Thagard's arguments concerning DSM's claims asserted against all Defendants, Thagard's Motion to dismiss DSM's breach of contract claim is premised on his contention that DSM has not adequately pled its trade secret misappropriation claim. Because the Court has rejected Thagard's argument as discussed above, Thagard's motion to dismiss DSM's breach of contract claim should also be denied.

{27} Next, regarding DSM's claim for breach of fiduciary duty against Thagard, the Court observes that "[a] claim for breach of fiduciary duty requires the existence of a fiduciary duty." *Governor's Club Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 247, 567 S.E.2d 781, 786 (2002). Generally, a fiduciary duty does not arise in the relationship between an employer (here DSM) and an employee (here Thagard). *Dalton v. Camp*, 353 N.C. 647, 652, 548 S.E.2d 704, 708 (2001) ("Under the general rule, the relation of employer and employee is not one of those regarded as confidential.") (quotation omitted)). "Even when an employee is entrusted with substantial managerial authority, a fiduciary relationship will not exist absent evidence that such authority led to the employer being subjugated to the 'improper influences or domination of [its] employee.'" *Battleground Veterinary Hosp., P.C. v. McGeough*, 2007 NCBC 33 ¶ 66 (N.C. Super. Ct. Oct. 19, 2007), www.ncbusinesscourt.net/opinions/101907%20Order%20Webpage.pdf (granting motion for summary judgment); *see, e.g., Dalton*, 353 N.C. at 651–52, 548 S.E.2d at 708–07 (stating that a fiduciary relationship exists where "'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . ., [and] it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and *resulting domination and*

*influence on the other.*'") (internal quotation marks omitted) (emphasis in original). "[O]nly when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the special circumstances of a fiduciary relationship has arisen." *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 475, 675 S.E.2d 133, 138 (2009) (citation omitted).

{28} Here, DSM has alleged that "Thagard held a position of trust and confidence at DSM as Application Manager – Life Protection, in which he, *inter alia*, was the lead scientist and technical leader for DSM's helmet and body armor development and new grade development." (Am. Compl. ¶ 64.) DSM has not alleged facts, however, suggesting that Thagard exerted domination or influence over DSM, that his awareness of DSM's technical information caused him to hold "all the cards" in his relationship with DSM, or that other factors indicate that the DSM-Thagard relationship was more than a typical relationship between an employer and an employee. Without more, the Court cannot conclude that DSM has sufficiently alleged the extraordinary or special type of employer-employee relationship that gives rise to a fiduciary duty. To the contrary, on the facts pled, the Court concludes that DSM has failed to allege that Thagard enjoyed the sort of domination or influence over DSM that our courts have found necessary to create a fiduciary duty. *See, e.g., Dalton*, 353 N.C. at 652, 548 S.E.2d at 708 (no fiduciary duty where production manager's duties were those delegated to him by employer, "such as overseeing the business's day-to-day operations by ordering parts and supplies, operating within budgetary constraints, and meeting production deadlines," which collectively "merely serve to define the nature of virtually all employer-employee relationships"); *Sunbelt Rentals, Inc. v. Head & Engquist Equip., LLC*, 2002 NCBC 4 ¶ 34 (N.C. Super. Ct. July 10, 2002), www.ncbusinesscourt.net/opinions/2002%20NCBC%204%20(Sunbelt).pdf (no fiduciary duty because employee's "substantial discretion with respect to the day-to-day, 'nuts and bolts' operation" did not constitute domination and influence over employer); *Austin Maint. Constr., Inc. v. Crowder Constr. Co.*, 742 S.E.2d 535, 542 (N.C. Ct. App. 2012) (no breach of fiduciary duty because "any confidence that

Plaintiff reposed in [employee] consisted of nothing more than relying on him to competently perform his assigned duties"); *compare Sara Lee Corp. v. Carter*, 351 N.C. 27, 29–30, 519 S.E.2d 308, 310 (1999) (defendant "owed a fiduciary duty to Sara Lee with respect to his role in recommending the purchase and ordering of computer parts and related services for Sara Lee" where defendant was "authorized and entrusted to order and purchase computer parts at the lowest possible prices"). As a result, the Court concludes that DSM's breach of fiduciary duty claim against Thagard should be dismissed with prejudice.

C. <u>Motions for Protective Order and to Compel</u>

{29} North Carolina's liberal discovery rules permit parties to obtain discovery on any relevant, non-privileged matter that appears "reasonably calculated to lead to the discovery of admissible evidence." N.C. R. Civ. P. Rule 26(b) (2014); *Analog Devices, Inc. v. Michalski*, 2006 NCBC 14 ¶ 22 (N.C. Super. Ct. Nov. 1, 2006), www.ncbusinesscourt.net/opinions/2006%20NCBC%2014.htm (requiring production of documents and splitting the cost of production between the parties). However, "[i]t is equally clear under the Rules that North Carolina judges have the power to limit or condition discovery under certain circumstances." *Id.* at ¶ 40. Rule 26(c) provides that,

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the judge of the court in which the action is pending may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the discovery not be had; that the discovery may be had only on specified terms and conditions . . . that the scope of the discovery be limited to certain matters . . . [and] that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way . . . .

N.C. R. Civ. P. 26(c) (2014).

{30} In the *P.O. Order*, the Court ordered DSM to supplement its responses to the Honeywell Defendants' discovery requests and to provide a more specific identification of its trade secrets. DSM supplemented its responses in a sealed filing on November 20, 2014 by further expanding its trade secret definitions and

listing the detailed formulas of the alleged trade secrets at issue. (DSM's Br. Supp. Mot. Compel, Ex. A.) In particular, DSM has provided, under an Attorneys' Eyes Only confidentiality designation, a 14-page, single-spaced narrative description of its alleged trade secrets with specific descriptions concerning its fibers, materials, and processes that it uses to make the composite shield material, ballistic fibers, and armor products that DSM contends are at issue in this litigation and have been misappropriated by Defendants. DSM contends that its trade secret identification complies with the Court's *P.O. Order* and North Carolina law and entitles it to discovery of the Honeywell Defendants' relevant confidential information and trade secrets.

{31} The Honeywell Defendants argue in response that DSM has simply listed its entire production process "without saying which parts were misappropriated (or which were trade secrets)" and otherwise identified various items that are "just well-known features of ballistic materials and the process by which these materials are made." (Honeywell's Br. Supp. Mot. Prot. Order, pp. 13—14.) As such, the Honeywell Defendants contend that DSM's identification remains deficient at this stage and should not justify a "fishing expedition" into their protected information.

{32} As noted in the *P.O. Order*, the Court's task in resolving the parties' competing Motions to Compel and for Protective Order is to weigh and balance the various considerations supporting strict pre-discovery disclosure of a plaintiff's trade secrets, *see P.O. Order* ¶ 18, against those considerations counseling against unfairly limiting a plaintiff's ability to discover evidence supporting its claims, *id.* ¶¶ 19—21. *See also Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 672 (D. Mass. 1986) ("In cases involving the disclosure of confidential information and/or trade secrets, the Court must strike a balance.").

{33} In striking that balance here, the Court finds it significant that DSM has not only alleged that Thagard had access to DSM's trade secrets and then went to work for the Honeywell Defendants—which are the allegations on which Defendants focus—but also that Thagard allegedly downloaded DSM's trade secret information from his DSM computer, deleted other confidential information prior to

his resignation, and disclosed DSM trade secrets to the Honeywell Defendants, and that the Honeywell Defendants, who previously had never passed the ballistics testing phase of the ECH project, were, after hiring Thagard, able to pass the ballistics test, secure a contract with Ceradyne for the first time, and allegedly induce Ceradyne to terminate (and allegedly breach) its contract with DSM. Although DSM's supplemental identifications do not appear to specify with exact precision which alleged trade secrets Defendants are alleged to have misappropriated, the Court is persuaded that in these circumstances—where DSM reasonably contends that the finished product at issue is "the result of a recipe or formula of numerous variables" and is not publicly available for purchase or inspection, (DSM's Resp. Honeywell's Mot. Prot. Order, p. 13), and where the Court finds that the nature of Defendants' alleged misappropriation creates an inherent difficulty for DSM to identify which portions of its trade secrets have been misappropriated prior to the receipt of discovery from Defendants[6] —the Court concludes that DSM has satisfactorily complied with the Court's *P.O. Order* and that the Honeywell Defendants should now be required to produce to DSM their relevant and responsive confidential information and trade secrets.[7] *See, e.g., SCRTech, LLC v. Evonik Energy Servs. LLC,* No. 08 CVS 16632 (N.C. Super. Ct. Dec. 30, 2009) (permitting discovery of defendant's confidential information and trade secrets where plaintiff "describ[ed] in detail the underlying process it use[d] for creating catalyst regeneration recipes and the criteria it use[d] to interpret catalyst tests").

---

[6] *See, e.g., DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) ("[T]he trade secret plaintiff, particularly if it is a company that has hundreds of thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating.")

[7] The Court bases its ruling on the supplemental identifications set forth in Exhibit A of DSM's sealed November 20, 2014 supplemental interrogatory response. In that same sealed interrogatory response, DSM also sought to "expand[] and define[] its identification of its trade secrets at issue in this lawsuit" by including five "classes of information" at page 4. These descriptions, however, lack specificity and detail, are insufficient for purposes of permitting discovery into the Honeywell Defendants' trade secrets or confidential information, and do not factor into the Court's ruling.

{34}   Apart from whether discovery against them should proceed, the Honeywell Defendants further contend that, in any event, DSM's Discovery Requests are overly broad and unduly burdensome.  The parties have not devoted significant briefing or oral argument to this objection, however.  The Court concludes that the most efficient method to resolve this aspect of the Motions for Protective Order and to Compel is to require the Honeywell Defendants to serve revised discovery responses and objections in light of the Court's conclusions in this Order and Opinion and to permit the parties an opportunity to attempt to resolve any objections before bringing any unresolved issues to the Court for final determination.

III.

CONCLUSION

{35}   **IT IS THEREFORE ORDERED**, **ADJUDGED** and **DECREED** as follows:

a. The Honeywell Defendants' Motion for Judgment on the Pleadings is **DENIED**;

b. Thagard's Motion for Judgment on the Pleadings is **GRANTED in part** and **DENIED in part**;

c. DSM's claim for breach of fiduciary duty against Thagard is **DISMISSED with prejudice**;

d. DSM's Motion to Compel is **GRANTED in part** and **DEFERRED in part**;

e. The Honeywell Defendants' Motion for Protective Order is **DENIED in part** and **DEFERRED in part**;

f. The Honeywell Defendants shall serve revised responses to DSM's Discovery Requests no later than 30 days after the entry of this Order and Opinion;

g. After the Honeywell Defendants serve revised discovery responses, the parties are directed to attempt in good faith to resolve the Honeywell Defendants' objections, if any; and

h. In the event the parties are unable to agree on the scope of the Honeywell Defendants' objections and production, the parties shall

inform the Court of such disagreement by email no later than 14 days after service of the Honeywell Defendants' revised discovery responses.

{36} All other requested relief is **DENIED**.


**SO ORDERED**, this the 12th day of May 2015.


/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases